421 S.E.2d 58

**The CITY OF HUNTINGTON, a West Virginia Municipal Corporation, and Robert R. Nelson, in his Capacity as Mayor of the City of Huntington, Plaintiffs Below, Appellants,**

v.

**Darrell G. BLACK, Defendant Below, Appellee.**

**No. 20736.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1992.

Decided July 23, 1992.

---

Frederick G. Staker, III, Asst. City Atty., City of Huntington, Huntington, for appellants.

John F. Cyrus, Huntington, for appellee.

WORKMAN, Justice:

Through certified questions, this case presents issues of statutory construction and due process arising from the disciplinary reduction in rank and pay of a police officer. Appellants, the City of Huntington and Robert R. Nelson, as mayor of the city (hereinafter sometimes referred to collectively as either the City, the Mayor, or Mayor Nelson), raise the following certified questions:

(1) Whether, under chapter 8, article 14A, Section 3 of the West Virginia Code as amended, a police officer is entitled to an internal hearing before being discharged, removed, terminated, suspended or reduced in rank or pay?

(2) Whether due process requires that a police officer be afforded a pre-disciplinary hearing[1] prior to any punitive action being taken by the officer in charge?

The Circuit Court of Cabell County responded to each of these certified questions by ruling in the affirmative. With regard to the first certified question, we determine that West Virginia Code § 8–14A–3 (1990), by its express provisions, does not require that an internal hearing be conducted prior to discharge, suspension, or reduction in rank or pay if the punitive action has already been taken. Principles of due process, however, dictate that we respond to the second certified question by ruling that a predisciplinary proceeding is required prior to any discharge, suspension, or reduction in rank or pay absent exigent circumstances.

On August 24, 1990, without the benefit of any hearing, appellee Darrell Black (hereinafter referred to as Sergeant Black) was summarily demoted in rank and pay and placed on probation. The Mayor's decision to discipline Sergeant Black was based on an alleged racial remark purportedly made by Sergeant Black while on duty sometime in October 1989. Mayor Nelson was first apprised of the alleged racial slur in August of 1990 when, following a cross burning in the residential yard of Francia Ferguson, Mrs. Ferguson's daughter accused Sergeant Black of having uttered a racist remark ten months earlier.

---

1. The terms internal hearing and predisciplinary hearing are used synonymously in these certified questions.

In response to the daughter's accusations, Mayor Nelson requested an internal investigation on August 10, 1990. The Mayor subsequently took matters into his own hands by interviewing Mrs. Ferguson and her daughter on August 21, 1990. Two days later, Mayor Nelson summoned the police chief and Sergeant Black to his office. When these individuals arrived, Mayor Nelson stated summarily that Sergeant Black was guilty of making the alleged racial statement and gave him the option of retiring, taking a reduction in rank, or termination. Sergeant Black was not provided with the opportunity to respond to the charges against him nor was he given any information concerning the evidence compiled by Mayor Nelson.

On August 24, 1990, Mayor Nelson held a press conference during which he announced the disciplinary actions taken against Sergeant Black. Only after this public announcement did Sergeant Black receive the requisite written notice of the charges against him and the punitive action taken.[2] The written notice took the form of a letter from Mayor Nelson which was delivered to Sergeant Black on the afternoon of August 24, 1990. The disciplinary action taken against Sergeant Black included a demotion from sergeant to officer first class and a pay cut that resulted in Sergeant Black's annual salary being reduced from $22,500 to $20,800.

Sergeant Black appealed Mayor Nelson's actions to the Police Civil Service Commission ("Commission") for the City of Huntington, West Virginia. The Commission held a hearing in connection with the appeal on May 14, 1991. At the start of the hearing, counsel for Sergeant Black made a motion to dismiss the charges and to reinstate Sergeant Black to his former rank with back pay. As support for this motion, appellee's counsel argued that Mayor Nelson had reduced Sergeant Black's rank and pay without providing adequate notice or affording a hearing before an internal

hearing board on the issues giving rise to the punitive action and that these failures constituted violations of West Virginia Code § 8–14A–3 and both the state and federal constitutions. The Commission took Sergeant Black's motion for dismissal and reinstatement under advisement and the matter proceeded to a hearing on the merits. Following the close of the City's case, the Commission recessed the hearing and continued it generally. On August 21, 1991, the Commission entered an order granting Sergeant Black's motion for dismissal and reinstatement, ruling that appellee was entitled to notice and a hearing prior to being reduced in rank and pay. It is from that order that the appellants now appeal.

■ Appellants take the position that West Virginia Code § 8–14A–3 does not require an internal hearing prior to a reduction in rank and pay. That statute provides, in pertinent part, as follows:

(a) If the investigation or interrogation of a police officer or fireman results in the recommendation of some punitive action, then, before taking such action the police or fire department shall give notice to the police officer or fireman that he is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved and be delivered to the police officer or fireman no later than ten days prior to the hearing. An official record, including testimony and exhibits, shall be kept of the hearing.

(b) The hearing shall be conducted by the hearing board of the police or fire department except that in the event the recommended punitive action is discharge, suspension or reduction in rank or pay, and such action has been taken the hearing shall be pursuant to the provisions of article fourteen, section twenty [§ 8–14–20], and article fifteen, section twenty-five [§ 8–15–25] of this chapter, if

2. West Virginia Code § 8–14–20(a) (1990) requires that:

    [n]o member of any paid police department subject to the civil service provisions of this article shall be removed, discharged, suspend-

ed or reduced in rank or pay except for just cause ... and in no event until he shall have been furnished with a written statement of the reasons for such action.

applicable. Both the police or fire department and the police officer or fireman shall be given ample opportunity to present evidence and argument with respect to the issues involved.

W.Va.Code § 8–14A–3.

Appellants interpret West Virginia Code § 8–14A–3 to require a hearing before an internal hearing board *only* when the contemplated disciplinary action does not involve discharge, suspension, or reduction in rank and pay. Their position is that only one as opposed to two hearings are contemplated by West Virginia Code § 8–14A–3, since the introductory language of subsection (b) begins "[t]he hearing." Appellants further maintain that an internal hearing is bypassed in the event of discharge, suspension, or reduction in rank and pay when the sanction has already been taken, as in this case, because "[t]he hearing" contemplated is a public hearing before the Commission pursuant to West Virginia 8–14–20 [3] rather than an internal hearing before a policemen's hearing board.[4]

An examination of subsection (b) of West Virginia Code § 8–14A–3 leaves no doubt in this Court's mind that the Legislature intended that certain types of punitive action such as discharge, suspension, or reduction in rank or pay could be effectuated without first conducting an internal hearing before the police officer's hearing board. The use of the words "and such action has been taken" with reference to the punitive acts of discharge, suspension, or reduction in rank and pay is clearly conjunctive in meaning. W.Va.Code § 8–14A–3(b). The Legislature fully contemplated that certain punitive acts might be taken prior to holding an internal hearing. This is why the language of West Virginia Code § 8–14A–3(b) provides that where the course of punitive action chosen is discharge, suspension, or reduction in rank or pay "and such ac-

tion has been taken[,] the hearing shall be pursuant to" West Virginia Code §§ 8–14–20 and 8–15–25. The type of hearing provided for by subsections twenty and twenty-five is a public hearing before the Commission and not one before an internal hearing board. Accordingly, we read West Virginia Code § 8–14A–3 as providing that an internal hearing before the hearing board of the police department is not required prior to discharge, suspension, or reduction in rank or pay if the punitive action has already been taken.

■ Although we conclude that the statute at issue, West Virginia Code § 8–14A–3, did not require an internal hearing prior to the punitive action taken against Sergeant Black, we must also analyze whether principles of due process supersede statutory directive in this instance and mandate such a hearing nonetheless. As this Court recognized in *Major v. DeFrench,* 169 W.Va. 241, 286 S.E.2d 688 (1982):

> The United States and West Virginia Constitutions guarantee that no person shall be deprived of life, liberty or property without due process of law. W.Va. Const. art. 3, § 10; U.S. Const. amend. XIV. It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state. Thus whenever government action infringes upon a person's interest in life, liberty or property, due process requires the government to act within the bounds of procedures that are designed to insure that the government action is fair and based on reasonable standards.

*Id.,* 169 W.Va. at 251, 286 S.E.2d at 694–95.

Sergeant Black maintains, and the City does not dispute, that he has a property interest in continued employment at his attained rank which flows from applicable the civil service statutes. *See Major,* 169

---

**3.** The type of hearing provided for by West Virginia Code § 8–14–20(a) (as well as West Virginia Code § 8–15–25 (1990)) is a public hearing before the policemen's civil service commission. Such a hearing is available upon request whenever a police officer is "sought to be removed, discharged, suspended or reduced [in rank or pay]" pursuant to West Virginia Code § 8–14–20(a). If the punitive action was

taken prior to the opportunity for a hearing before the Commission, the police officer is nonetheless entitled to such a hearing following the disciplinary action according to the provisions of West Virginia Code § 8–14A–3(b).

**4.** *See* W.Va.Code § 8–14A–1(4) (1990).

W.Va. at 251, 286 S.E.2d at 695; W.Va. Code § 8–14–11 (1990). Appellee maintains further that a liberty interest is at stake, citing his good name[5] and prospects for future employment. *See Major,* 169 W.Va. at 254–56, 286 S.E.2d at 696–97; *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 159–60, 241 S.E.2d 164, 167–68 (1977).

■ As the United States Supreme Court recognized in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the following considerations must be examined to determine what procedural protections are constitutionally required in a given case:

first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903; *accord, Major,* 169 W.Va. at 257–58, 286 S.E.2d at 698. We applied the three *Eldridge* factors in *Major,* a case which involved the termination of a police officer at the conclusion of her probationary period, and found that:

Applying the first factor it is apparent that ... [p]ermanent appointment as a police officer is a substantial right which guarantees the employee job security, and enables her to function as an officer without fear of arbitrary treatment from superiors.

Applying the second factor, the standard contained in W.Va.Code § 8–14–11 ... is designed to prevent an erroneous or arbitrary decision. Procedural protections can only help ... reduce the risk of an erroneous deprivation of the probationer's protected interests.

Finally, the government's interest in avoiding any increased fiscal or administrative burden of required procedural protections is minimal, when considered in light of the benefits that will inure to

the city as a result of due process requirements....

169 W.Va. at 258, 286 S.E.2d at 698.

When the *Eldridge* factors are applied to the instant case, the overwhelming conclusion is that a predisciplinary hearing is a procedural protection which is both suggested and required by principles of due process. First, a police officer, whose employment rights are delineated by civil service statutes, has a substantial interest in maintaining his achieved rank and attendant pay. Second, given the exponentially increased risk of an erroneous deprivation of an individual's interest in continued employment absent such a hearing, the value of such a procedure is not just probable, but in fact certain. And third, any additional administrative or fiscal burdens incurred by the government through requiring a predisciplinary hearing will be minimal at best.

The United States Supreme Court in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), recently summarized how the *Eldridge* test has been applied:

the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property. See, e.g., *Cleveland Board of Education v. Loudermill,* 470 US 532, 542, 84 L Ed 2d 494, 105 S Ct 1487 [1493] (1985) (" '[T]he root requirement' of the Due Process Clause" is " 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest' "; hearing required before termination of employment (emphasis in original)); ... *Goss v. Lopez,* 419 US 565, 579, 42 L Ed 2d 725, 95 S Ct 729 [738–39] (1975) (at minimum, due process requires *"some* kind of notice and ... *some* kind of hearing") (emphasis in original); ....

494 U.S. at 127, 110 S.Ct. at 984 (some citations omitted).

Notwithstanding the Supreme Court's stated preference for predeprivation hearings, the Court did acknowledge in *Ziner-*

---

**5.** Sergeant Black has consistently denied the charge against him.

*mon* that "[i]n some circumstances, ... [it] has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128, 110 S.Ct. at 984. (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (" ' "[T]he necessity of quick action by the State or the impracticality of providing any predeprivation process" ' may mean that a postdeprivation remedy is constitutionally adequate, quoting *Parrat [v. Taylor]*, 451 US [527] at 539 [101 S.Ct. 1908, at 1915, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ] ...") The Court's ruling in *Zinermon* takes into consideration both pre- and post-deprivation hearings:

> In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.... Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, ... or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process.

494 U.S. at 132, 110 S.Ct. at 987 (citations omitted).

Although the United States Supreme Court has recognized that there are certain factual scenarios which preclude provision of a predeprivation hearing, the Court has reiterated on numerous occasions its overwhelming preference for predeprivation hearings where possible. *See id; see also Ingraham v. Wright*, 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977) (hearing prior to corporal punishment in public schools not required by Due Process Clause because "risk of error that may result in violation of a schoolchild's substantive rights can only be regarded as minimal"); *accord Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). We adopt the same line of reasoning applied by the Unit-

ed States Supreme Court in holding that principles of due process mandate that a police officer subject to civil service protection must be afforded a predisciplinary hearing prior to discharge, suspension, or reduction in rank or pay notwithstanding the provisions of West Virginia Code § 8–14A–3 unless exigent circumstances preclude such a predisciplinary hearing.

While we do not deem it necessary to elaborate on what circumstances would qualify as exigent at this juncture, we note that the Legislature has already codified one particular exigent circumstance which would justify immediate discipline without the opportunity for a predisciplinary proceeding. *See* W.Va.Code § 8–14A–2 (1990) (immediate temporary suspension of police officer who reports for duty under the influence of alcohol or controlled substances is permitted). The facts of this case simply do not present any exigencies that justify the preclusion of a predeprivation proceeding. Sergeant Black did not pose any type of immediate threat or harm to the public or to the department itself. Furthermore, the racist remark which he allegedly made took place some ten months before the demotion. An expeditious predisciplinary hearing could easily have been held in this matter at minimal cost to the City.

Although the parties do not directly raise the issue of what type of predeprivation hearing is required by due process concerns, we anticipate that question and respond by stating that "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (quoting *Eldridge*, 424 U.S. at 343, 96 S.Ct. at 907). The Supreme Court explained the limited function of a predisciplinary hearing in *Loudermill*, stating that "the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to

believe that the charges against the employee are true and support the proposed action." 470 U.S. at 545–46, 105 S.Ct. at 1495.

Having answered the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered; case dismissed.