439 S.E.2d 465

**Arden D. ASHLEY, Sheriff of Kanawha County, Appellant,**

v.

**Catherine A. BELLEW, Donald R. Adkins, Jr., Fred S. Beane III, Michael P. Dalporto, Richard C. Ward, Tracy G. Parsons, and Rodney E. Bryan, Appellees.**

No. 21557.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Dec. 16, 1993.

Phillip D. Gaujot, Charleston, for appellant.

Arden J. Curry II, Charleston, for Catherine A. Bellew.

William E. Murray, Charleston, for Donald R. Adkins.

Peggy L. Collins, Charleston, for Fred S. Beane.

Clinton W. Smith, Charleston, for Rodney Bryan.

Michael R. Cline, Charleston, for Michael P. Dalporto.

PER CURIAM:

This is an appeal by Arden D. Ashley, Sheriff of Kanawha County, from an October 10, 1992, order of the Circuit Court of Kanawha County affirming a decision of the Kanawha County Correctional Officers Civil Service Commission ("the Commission"). The Commission's decision reversed the Appellant's termination of certain employees, finding a denial of due process in the Appellees' termination procedure, and reinstated the Appellees with full back pay and benefits. That decision was affirmed by the Circuit Court of Kanawha County. The Appellant requests this Court to reverse and remand to the Commission for a hearing on the merits. We agree with the contentions of the Appellant and hereby grant the requested relief.

## I.

On May 3, 1991, an arrestee was taken into custody and incarcerated in the Kanawha County Jail. Each of the Appellees was on duty as a correctional officer on May 3, 1991, and it is alleged that one or more of them used undue force in attempting to subdue the arrestee during an exchange of handcuffs. The incident was recorded by video camera situate in the lobby-receiving area of the jail. Subsequent to placement in a cell, the arrestee was allegedly again physically abused by several of the Appellees.

Despite their obligation [1] to detail any unusual events in activity reports, the Appellees failed to mention the severity of this incident in the reports which were subsequently filed.[2] The ranking officer on duty, Appellee Catherine Bellew, telephoned her supervisor, Deputy Chief Jailer Bill Hunt, and advised him that an incident had occurred, but she failed to specify that an arrestee had been beaten, as was later alleged.[3] Subsequent to her conversation with her supervisor, she photographed the inmate, attached the photograph to the activity reports, and slipped them under the door of Chief Jailer John King, as suggested by her supervisor.

It was not until Sheriff Ashley received a telephone call from Mr. Bobby Thompson [4] on May 7, 1991, that anyone in the Sheriff's Department, other than the involved Appellees, had notice of severity of the alleged abuse and beating. Subsequent to that telephone call, Sheriff Ashley requested that Chief Deputy L.L. Herald initiate an internal investigation, and the investigation was assigned by Chief Herald to Corporal J.W. Johnson. Pursuant to that investigation, each of the Appellees was questioned regarding the incident. Six of the seven correctional officers provided statements which the Appellant contends were entirely different from the statements provided within their activity reports filed immediately after the

1. Pursuant to the rules and regulations of the Kanawha County Sheriff's Department, Correctional Division, the correctional officers were obligated to complete activity reports immediately, describing any unusual activities occurring during their shifts.

2. The activity reports of each officer were allegedly prepared in accordance with the one prepared by the ranking officer on duty, Catherine Bellew. The correctional officers were permitted to review the activity report of Ms. Bellew and were apparently instructed by Ms. Bellew to prepare their activity reports in like fashion. Ms. Bellew's activity report explained that "Charleston Police Officer Brooks brought in one John Doe. This individual was disorderly." She stated that before the individual was unhandcuffed, a set of handcuffs and leg irons were transferred to this individual. He was described to be approximately 6'2" and 300 pounds. Ms. Bellew explained that the subject resisted booking procedures and had to be wrestled to the floor. He was then carried back to his cell. Ms. Bellew

also noted that the individual did not smell of alcohol, leading the officers to believe that he may be on some type of drug, possibly acid. She also mentioned in her report that the subject was chanting "Black" and "Evil." She did not, however, make any mention of any beating of the individual by the officers. The other officers' reports were similar and stated that the individual become unruly and had to be restrained.

3. Again, Ms. Bellew informed Mr. Hunt that the subject had resisted the booking procedures and had to be restrained. She apparently did not, however, inform him that any beating of the individual took place.

4. Mr. Thompson first attempted to contact Sheriff Ashley on May 6, 1991. The Sheriff then returned his call on the morning of May 7, 1991, and was informed by Mr. Thompson that the mother of an inmate in the Kanawha County Jail had alleged that her son had been beaten while in the custody of the officers at the jail.

incident.[5] The seventh correctional officer, Rodney Bryan, did not give a statement until May 10, 1991. Mr. Bryan's statement also indicated that the activity reports had not been complete.

On May 10, 1991, based upon his review of the videotape of the incident,[6] the Appellant suspended six of the seven Correctional Officers without pay. Officer Bryan, who was not suspended, had not yet given his statement, and the video did not indicate any involvement on his part in the actual beating. The Appellees were neither granted a formal pre-suspension hearing nor furnished with written statements specifying the grounds for the suspension. Although the suspensions were made on May 10, 1991, Corporal Johnson did not complete his internal investigation report until May 11, 1991.

The suspended officers appealed the suspension to the Commission, and a hearing was scheduled for May 28, 1991. On May 23, 1991, the Appellant terminated the Appellees and served termination notices on all the Appellees.[7] The Appellant, based upon the intervening terminations, requested that the Commission postpone the hearing on the suspension and merge the suspension hearing with the anticipated termination hearings. On May 28, 1991, the Commission granted that request.

Subsequent to numerous continuances by both counsel for the Sheriff and counsel for the officers, the matter was heard before the Commission on March 9, 1992. Relying upon our recent decision in *City of Huntington v. Black*, 187 W.Va. 675, 421 S.E.2d 58 (1992), the Commission determined that the Appellant had improperly denied pre-deprivation proceedings and had failed to present any exigencies which justified such preclusion. The lower court, by order dated October 15, 1992, affirmed that decision of the Commission, finding that reinstatement with full back pay and benefits was appropriate.[8]

## II.

■ The Appellees contend that pursuant to the due process rights afforded them by the United States Constitution, they were entitled to both pre-suspension and pre-termination proceedings. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In the syllabus of *Black,* we explained the following:

West Virginia Code § 8–14A–3 (1990), by its express provisions, does not require that an internal hearing be conducted prior to discharge, suspension, or reduction in rank or pay if the punitive action has already been taken. Principles of due process, however, dictate that a police officer subject to civil service protection must be afforded a predisciplinary proceeding prior

---

5. In reality, the activity reports initially submitted, as evidenced by the summary of Ms. Bellew's report above, mentioned only that the individual was resistive and combative. They did not, however, detail the actual striking or kicking of the individual which actually took place. It was not until the correctional officers provided statements that the striking of the individual was described. Thus, the Appellant's characterization of the statements as entirely different from the initial activity reports must be understood to mean that the initial reports failed to detail the actual striking of the individual.

6. Specifically, the Appellant's brief suggests that the Sheriff suspended the officers after "[h]aving viewed the video of May 3, 1991, but not having the benefit of digesting the substance of the statements given by the Correctional Officers on May 9, 1991...."

7. Although Officer Bryan had not been suspended when the other Appellees were suspended on May 10, 1991, the Appellant considered his actions sufficient to classify him as a participant in the cover-up, and Officer Bryan was also terminated on May 23, 1991. Thus, all seven correctional officers were terminated and were provided with a letter of termination stating that the officers failed to protect the "life, liberty, property, and safety" of the individual to be taken into custody and did not properly report the circumstances surrounding the physical assault and battery on the individual.

8. As noted in the lower court's final order, the Commission did not reach the merits of the case in reaching its decision. The lower court stated: "Unfortunately, the issues of whether or not the officers acted properly or improperly or whether the officers participated in a cover-up scheme, and ultimately whether just cause was present for discharge were not decided. Rather the Commission based its decision on whether the officers involved were provided a pre-termination hearing...."

to discharge, suspension, or reduction in rank or pay notwithstanding the provisions of West Virginia Code § 8–14A–3 unless exigent circumstances preclude such a pre-disciplinary hearing.

187 W.Va. at 676, 421 S.E.2d at 59.

■ *Black,* however, was decided *subsequent* to the incident which forms the basis for this appeal, and we did not make *Black* retroactive. Regarding retroactivity, we stated the following in syllabus point 5 of *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979),

In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public policy issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

*Id.* at 332–33, 256 S.E.2d at 880–81.

With due regard to these factors, we do not perceive *Black* to be the type of case which should be retroactively applied. Without the guidance provided in *Black,* the Appellant would have had no prior knowledge or warning of the hearing requirements which were first enumerated in *Black.* We find that the Commission's reliance upon *Black,* a case decided subsequent to the events in question in this case, was therefore misplaced. We consequently reverse the decision of the Commission and the lower court with regard to the Appellees' lack of procedural due process rights.

■ The Appellees also contend that even if their constitutional due process rights have not been violated, their rights pursuant to internal Sheriff's Department regulations were violated. The Appellees contend that pursuant to the terms of Sheriff's Department General Order Number 302, they were entitled to pre-suspension and pre-termination hearings. General Order 302 is a portion of certain mandatory procedures adopted by the Sheriff's Department which govern procedures to be employed in an officer's suspension or termination. Section IV of the order provides that an officer who may be subjected to disciplinary action such as dismissal or suspension must be provided with a memorandum of the charges upon which that action may be based and given an opportunity for a hearing before a three-member panel in advance of the disciplinary action. Pursuant to General Order 302, "[t]he supervisor shall notify the accused employee by memorandum of the charges, the basis therefor, the action which may be taken, and the recommendation for disciplinary action."

While it cannot be denied that the Appellee failed to strictly comply with the requirements of this internal regulation, we do not find such absence of rigid adherence fatal to the Appellant's position in this case. From the record before us, it appears abundantly clear that the officers were well-aware of the charges against them and were given an opportunity to respond to them. While the Appellant should make a diligent effort to adhere more concisely to the internal regulations in the future, we do not find this technical violation to be dispositive in the present case.[9]

9. The Appellant also contends that even if we were to find that pre-deprivation hearings were required, exigent circumstances existed which justified the lack of such hearings. The Appel-

## III.

As noted above, due to the alleged procedural error, the Commission did not have the opportunity to address the substantive issues before it. The only issue on appeal is therefore the procedural determination that the Appellant wrongly terminated the Appellees without a hearing. Based upon the fact that the judgment of the Commission in this regard was based upon a case which had not yet been decided at the time of this incident, we decline to affirm the decision of the lower court. To do so would be to impose standards upon the Appellant which had not yet been enunciated at the time the termination decisions were made.

We therefore reverse the decision of the lower court and remand this case to the Commission for continued hearing on the merits of the underlying case.

Reversed and Remanded.

---

lant correctly emphasizes the United States Supreme Court's recognition that due process will be satisfied by a post-termination hearing where a valid governmental interest is at stake that justifies postponing the hearing. *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972). The Appellant cites *State ex rel. Sweikert v. Briare*, 94 Nev. 752, 588 P.2d 542 (1978), for the proposition that exigent circumstances do occasionally exist which justify the lack of a pre-deprivation hearing.

The Appellant contends that there was probable cause in the present case to believe that the Appellees had acted improperly in physically abusing an arrestee. In light of this type of allegation, the State had a legitimate interest in protecting those persons lawfully in the Sheriff's custody and control in the jail. The job of correctional officer in a jail is probably one of the most difficult and demanding. Correctional officers must deal with extremely difficult people under difficult circumstances. On a day-to-day basis, they must consistently show remarkable restraint and self-control if they perform their duties appropriately. In light of the seriousness of the alleged violations, this case may indeed be an example of what we referred to in *Black* as a case in which an exigency justifies the lack of pre-deprivation hearings. We need not decide that issue at this time, however.