482 S.E.2d 232

**William S. EATON, Plaintiff Below, Appellant,**

v.

**CITY OF PARKERSBURG and Eugene A. Knotts, Individually and in His Official Capacity as Mayor of the City of Parkersburg, Defendants Below, Appellees.**

**No. 22846.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 19, 1996.

Decided Dec. 20, 1996.

---

Mike Kelly, Kelly & Grubb, Charleston, for Petitioner.

J. Victor Flanagan, Scott D. Maddox, Cleek, Pullin, Knopf & Fowler, Charleston, for Respondents.

PER CURIAM:

The Appellant, William S. Eaton, appealed from a decision of the Circuit Court of Wood County granting summary judgment to the Appellees, the City of Parkersburg and Mayor Eugene A. Knotts, in Eaton's suit for wrongful termination of his employment. By opinion dated July 19, 1996, this Court affirmed the judgment of the circuit court. The Appellant subsequently petitioned for a rehearing, and the petition was granted. On reconsideration, we [1] reverse the decision of

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

the circuit court and remand the case for an adjudication on the merits.

The Appellant worked for the City of Parkersburg for approximately seventeen years. His most recent position was Community Improvement Director, and his primary area of responsibility was administration of Community Development Block Grants made to the city by the federal Housing and Urban Development Authority ("HUD"). Eaton was given this responsibility on or about February 25, 1993, in response to correspondence from and a meeting with HUD indicating that Parkersburg was in danger of losing $207,000 in CDBG money and being placed on a "reimbursement plan," which would require the city to front the money and be reimbursed by HUD for qualifying grants, unless it both improved its financial management and distributed a considerable amount of money within a short time frame.

Soon after his election in November 1993, Mayor Knotts learned of potential problems with CDBG money. He held meetings with his staff in December 1993 to discuss the situation. Eaton attended one such meeting at the request of the new mayor and assured everyone that, although there had been a problem, everything was under control. On February 18, 1994, the mayor and other city officials met with HUD representatives in Pittsburgh to get more information. This meeting was prompted by correspondence from HUD that the city was still in jeopardy of losing HUD funds. The parties dispute whether Eaton had the ability to distribute the funds in question.

On March 1, 1994, Mayor Knotts asked Eaton for his resignation. When Eaton refused, the mayor delivered a letter placing him on suspension with pay, and setting a preliminary hearing on his proposed dismissal before Joseph W. McFarland, Jr., Municipal Judge.[2] The reason given for the proposed dismissal was inadequate job performance. A copy of the city's personnel handbook was enclosed.[3] The handbook sets out the city's employment policies and procedures, information regarding holidays and vacations, classification and compensation plans, etc. It includes a policy statement on disciplinary procedures, which sets out the rights and responsibilities of employees and supervisors in case of faults in performance, and sets out progressive disciplinary steps to be used "whenever possible."[4]

---

**2.** The city apparently believed it was bound by our opinion in *Huntington v. Black*, 187 W.Va. 675, 421 S.E.2d 58 (1992), to offer a predisciplinary hearing. In *Black*, we held that principles of due process require that a police officer subject to civil service protection be given a predisciplinary proceeding prior to discharge, suspension, or reduction in rank or pay. Following *Black*, the city adopted an ordinance that provides that the municipal court judge shall serve as a hearing examiner in predisciplinary probable cause hearings for municipal employees when such hearings are required by city ordinance or by state or federal law. Because the Appellant was not protected by civil service statutes, our opinion in *Black* was not relevant to his termination, and we agree with the circuit court's conclusion that the ordinance did not apply to his case.

**3.** Eaton had also received a copy of the personnel manual in March, 1992, when it was first adopted. On October 2, 1992, Appellant signed an acknowledgment stating that he had received the handbook on that date, and that, "I understand the Personnel Handbook does not constitute a contract of employment and is subject to change."

**4.** The "Disciplinary Procedures" section provides, in relevant part:

It is the duty of every supervisor to encourage quality performance by recognizing satisfactory and outstanding performance by employees. Every supervisor also shall discuss improper or inadequate performance with the employee in order to correct the deficiencies and to avoid the need to exercise disciplinary action. Discipline shall be, whenever possible, of an increasingly progressive nature. The steps of progression are (a) verbal warning, (b) written reprimand, (c) suspension, (d) demotion, and (e) termination.

. . .

B.   STEPS OF PROGRESSION

1. *Verbal Warning.* Whenever grounds for disciplinary action exist, and the supervisor determines that more severe action is not required or not yet warranted, the supervisor should verbally communicate to the employee the observed deficiency or violation....

2. *Written Reprimand.* The second step in disciplinary action is a written reprimand. Such reprimand should be addressed to the employee and a signed copy should be delivered to the Personnel Director for inclusion in the employee's personnel file....

3. *Suspension.* A department head, with the concurrence of the Personnel Director and approval of the Mayor may suspend without pay

On March 9, 1994, Eaton received a second letter, continuing the hearing to a later date, and repeating the proposed action. On March 18, 1994, a hearing was held before Judge McFarland. Both sides presented evidence and submitted exhibits. Eaton asserted that his termination violated the provisions of the employee handbook, which he contended was a binding contract of employment with the city. The City of Parkersburg asserted that the handbook did not constitute a contract, and that even if it did, Eaton was subject to termination under its provisions. The municipal judge, sitting as hearing examiner, issued his decision on March 24, 1994, concluding that the personnel manual constituted a contract of employment. Judge McFarland decided, however, that Eaton had been terminated for just cause, because he made misrepresentations to city council, which were grounds for discharge under sections XII(B)(5)(a),(b), or (k) of the manual, namely refusal to comply with lawful instruction, insubordination, and gross carelessness, negligence or repeated improper use of city property, respectively.

The Appellant undertook to proceed with an appeal by acquiring a date to appear before the Personnel Review Board pursuant to the manual.[5] The Personnel Review Board scheduled a hearing for April 20, 1994. On April 15, this hearing was canceled by the city. The city asserts that it canceled the hearing because the handbook appeal procedures required that an employee desiring to appeal must submit to the board a written statement of appeal, and the Appellant failed to do so. The Appellant contends that to do so would have been futile, since the board was fully apprised of the nature of his grievance. Eaton filed suit for wrongful termination in the Circuit Court of Wood County soon thereafter.

The circuit court granted summary judgment in favor of the Appellee, reasoning that: (1) No preliminary probable cause hearing was required in this case; (2) Even if such a probable cause hearing was required, Eaton failed to exhaust his administrative remedies; (3) Eaton was an "at-will" employee, subject to termination with or without cause at any

---

a regular employee for up to, but not exceeding, ten (10) calendar days as a disciplinary measure. On or before the effective date, the employee and the Personnel Director shall be furnished with a written statement setting forth reasons for the suspension.
4. *Demotion* A department head may, with the concurrence of the Personnel Director and the approval of the Mayor demote or reduce in salary any regular employee when a bona-fide business reason has been established and it can be clearly demonstrated that the demotion of the employee is based on an objective and documented basis.
5. *Termination.* For violation of any of the following charges, the employee may be subjected to immediate termination. The department head must have the concurrence of the Personnel Director and approval of the Mayor. A written letter stating reasons for dismissal must be sent to the employee and copies must be sent to the Personnel Director and the Mayor.
(a) Refusal to comply with a lawful instruction unless such instruction is injurious to the employee's or the general public's health or safety.
(b) Insubordination.
. . .
(k) Gross carelessness, negligence or repeated improper use of city property.

5. With regard to appeals from disciplinary action taken pursuant to the procedures set out in the preceding footnote, the manual provides:

All career service employees, both full-time and temporary, are granted the right to appeal. Within ten (10) days after the effective date of disciplinary action, the employee may file a written appeal to the Personnel Review Board. Procedures for handling the appeal shall comply with those presented in the description of the Grievance System.

The Personnel Review Board consists of three members, one appointed by the Employee Advisory Council, one appointed by the Mayor, and one appointed by the Parkersburg Chamber of Commerce. The manual states:

Any employee desiring to appeal a disciplinary action or any unresolved grievance to the Personnel Review Board, shall state in writing a brief but concise description of the disciplinary action or subject matter of the grievance; actions taken in response thereto as provided in the personnel management system and the result thereof; and written reasons why the employee believes that the action taken in regard to him or her was improper.

. . .

The mayor retains the authority to make the final decision regarding resolution of the appeal. Within five (5) working days after receiving the report the mayor shall by written notice inform the Chairperson of the Board and the employee of that decision.

time; (4) The employee handbook in this case did not alter that employment relationship, because there was no clear intent to do so, and if there had been, it was effectively disclaimed; (5) Summary judgment was proper where the plaintiff sought equitable relief (reinstatement); and (6) Even if the personnel handbook were a contract, Eaton's actions constituted grounds for immediate dismissal, and, in addition, the handbook makes all its provisions subject to final determination by the mayor.

■ The essence of the Appellant's assignments of error is that his discharge breached an implied contract created by the employee handbook. The Appellant argues that the existence of a contract, the effectiveness of the disclaimer, and whether the city complied with the handbook's procedures for termination of employees are appropriate questions for the jury, and that, therefore, the circuit court should not have granted the Appellees' motion for summary judgment.

■ In the absence of other evidence, West Virginia law presumes that employment is at will. "When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). We have reiterated this point in the context of employee handbooks. *See, e.g.,* Syl. Pt. 1, *Suter v. Harsco Corp.,* 184 W.Va. 734, 403 S.E.2d 751 (1991). In *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986), this Court decided that the presumption of at-will employment could be altered by the provisions of an employee handbook in certain circumstances. "An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons." *Id.,* Syl. Pt. 6. If the handbook contains a definite promise of job security, that promise is seen as an offer for a unilateral contract. By continuing to work in reasonable reliance on the job security promised by the handbook, the employee accepts that offer, and the law implies a contract. *See id.* at 374, 342 S.E.2d at 459.

■ In syllabus point two of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), a case that also addressed the existence of an implied contract based on an employee handbook, this Court focused on the propriety of granting summary judgment in such cases:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

The determination of whether the employee handbook contains a definite promise of continued employment sufficient to support reasonable reliance on that promise by the employee, and his continuing to work on account of that reliance, must be made in the context of the facts and circumstances of a given case. For this reason, we said in *Cook* that the existence of a contract generally is a question of fact for the jury. 176 W.Va. at 372, 342 S.E.2d at 457.

■ We concluded in our original opinion that the provisions in the employee handbook in this case could not lead a rational trier of fact to find that it contained a definite promise of continued employment. On reconsideration, we believe that the existence of a contract, the effectiveness of the disclaimer, and whether the Respondents had grounds for immediate termination under the handbook provisions should be decided by the jury, based on the totality of the evidence. Upon further consideration we also conclude that exhaustion of administrative remedies was not required, because further pursuit of Eaton's administrative remedies would have been fruitless. *See McCarthy v. Madigan,* 503 U.S. 140, 148, 112 S.Ct. 1081, 1088, 117 L.Ed.2d 291, (1992). For the reasons set out herein, we reverse the judgment of the circuit court.

Reversed.

RECHT, Judge, sitting by temporary assignment.

WORKMAN, J., dissents and reserves the right to file a dissenting opinion.