301 S.E.2d 588

**Linda Lou DILLON, et al.**

v.

**The BOARD OF EDUCATION OF the COUNTY OF MINGO, etc., et al.**

No. 15548.

Supreme Court of Appeals of West Virginia.

March 25, 1983.

---

Bradley J. Pyles, Crandall, Pyles & Crandall, Logan, for appellants.

Ronald J. Rumora, Smith & Rumora, Williamson, for appellees.

MILLER, Justice:

In this appeal from an order of the Circuit Court of Mingo County denying a writ of mandamus, we are asked to decide whether teachers could receive pay for days absent when they were prevented from entering the school as a result of parents' picketing. The lower court declined to order a pay award and we reverse. The legal issue centers on an interpretation of W.Va.Code, 18A–5–2, relating to school closures and in particular whether there

existed a "calamitous cause over which the board has no control."

The appellants were employed as teachers at the Marrowbone Grade School in Mingo County during the 1979–80 school year. Due to the merger of two schools into one, a problem apparently developed with busing students. The buses had to run in several shifts which required some students to leave school early while others had to wait for buses to make a second run. The parents became upset over the situation and first attempted by picketing to prevent the buses from getting to the school. When prevented from such conduct, the parents established a picket line in the front of the school.[1]

In the underlying trial, it was claimed that on four days the pickets prevented the appellants from entering the school. During this period, the students did report to school but were sent home in the morning hours of each day pursuant to directives of the county school superintendent.

It was not disputed at the hearing that the school board had earlier obtained an injunction against the picketing in order to limit the number of pickets and to prevent any intimidation or violence. After the injunction was issued, the appellants crossed the picket line. The trial court concluded that there was no legal duty owed by the board of education to make a pay award and dismissed the suit.

The question as to whether the board had a legal duty to pay the appellants turns upon a construction of W.Va.Code, 18A–5–2, which in its applicable part provides:

"Any school or schools may be closed by proper authorities on account of the prevalence of contagious disease, conditions of weather or *any other calamitous cause over which the board has no control.* Under any or all of the above provisions, the time lost by the closing of schools shall be counted as days of employment and as meeting a part of the

requirements of the minimum term of one hundred eighty days of instruction. . . . *Professional, auxiliary and service personnel shall receive pay the same as if school were in session."* (Emphasis added)

We have not had occasion to construe this statute. There is general law elsewhere, which is not of recent vintage and is independent of any statute, that holds in the absence of a special contract provision a teacher may recover compensation during periods that the school is closed from some outside source such as an epidemic or fire. *Phelps v. School District No. 109,* 302 Ill. 193, 134 N.E. 312 (1922); *Hughes v. Grant Parish School Board,* 145 So. 794 (La.App. 1933); *Board of Education v. Couch,* 63 Okl. 65, 162 P. 485, 6 A.L.R. 740 (Okl.1917); 68 Am.Jur.2d *Schools* § 145 (1973); 78 C.J.S. *Schools and School Districts* § 220 (1952). This law is predicated on contractual principles relating to excusing nonperformance by way of an act of God or other extreme circumstance. The courts generally held that an epidemic or fire was not a sufficient impossibility to relieve the board of education of its duty to pay its teachers.

Of some interest is the fact that in its original form, W.Va.Code, 18–7–4 (1931), was narrowly drawn not only as to the cause for closure but also on the basis that it provided no explicit right to a teacher to receive pay during the closing:

"If any school is closed by the proper authorities on account of the prevalence of any contagious or infectious diseases, the time during which such school is closed shall be counted as if taught in determining whether a school has been maintained for the minimum term, and teacher of such school shall not be compelled to make up such lost time, provided he held himself in readiness to teach subject to the order of the board."[2]

---

1. The picketing parents apparently stopped blocking the school buses when they were advised that such action was in violation of the compulsory school attendance statute, W.Va. Code, 18–8–2, and could lead to criminal charges.

2. This same language can be traced to Section 57 of Chapter 45 of the 1923 Acts of the Legislature and apparently originated in Section 57 of Chapter 2 of the 1919 Acts.

In 1969, this section was amended to include its present language which considerably expands the causes for closing to "the prevalence of contagious disease, conditions of weather or any other calamitous cause over which the board has no control." The amendment also explicitly provides that "[p]rofessional, auxiliary and service personnel shall receive pay the same as if school were in session." W.Va. Code, 18A–5–2.

We believe the amendments evidence a legislative intent to broaden the coverage of the statute. Furthermore, since the statute provides enhanced economic rights, we follow the general rule that provides for liberal construction of economic or social legislation. *E.g., Andy Bros. Tire Co., Inc. v. West Virginia Tax Commissioner,* 160 W.Va. 144, 233 S.E.2d 134 (1977); 3 Sutherland, Statutes and Statutory Construction § 71.07 (Sands 4th ed. 1973).

■ Additionally, we also accord considerable weight to the administrative interpretation placed on this statute by the state superintendent of schools who under W.Va. Code, 18–3–6, is charged with interpreting school law.[3] It was the state superintendent's conclusion in his letter to the county superintendent that the teachers were entitled to be paid.[4] In Syllabus Point 4 of *Security National Bank & Trust Co. v. First W.Va. Bancorp., Inc.,* 166 W.Va. 775,

277 S.E.2d 613 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284, we said:

"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous."

*See also Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975); *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975).

■ We believe that the term "calamitous cause" must be taken to mean any emergency which threatens the welfare or safety of the school, its pupils, and personnel.

■ The appellees argue that W.Va. Code, 18A–5–2, requires that the school "must be closed by proper authorities" and there was no showing that proper authorities ever closed the school. The record discloses that on each of the four days that the teachers did not cross the picket line, the school was closed and the children were sent home after the principal called the county superintendent's office and received permission from either the superintendent or his assistant. Under W.Va.Code, 18–4–10, a county superintendent has authority to temporarily close a school where conditions exist that are detrimental to the health, welfare or safety of the pupils.[5]

**3.** W.Va.Code, 18–3–6, provides:

"At the request in writing of any citizen, teacher, school official, county or state officer, the state superintendent of schools shall give his interpretation of the meaning of any part of the school law or of the rules of the state board of education."

**4.** Part of the appellants' argument in the lower court was that the board of education had taken the position that if it was lawful to pay them for the four days, it would. To this end, the county superintendent wrote a letter to the state superintendent who by a letter dated November 30, 1979 replied:

"When teachers or other personnel do not report for work due to fear of crossing a picket line of parents who are upset about conditions at the school, the county board of education may pay any such employees, unless their fears are unreasonable, because employees are entitled to safe working conditions and a county board of education has been authorized by law (W.Va.Code 18A–5–2)

to close any school for a 'calamitous cause over which the board has no control.' In the situation which you have described in your above-referenced letter, the board would appear justified in paying the teachers and other personnel who were prepared to go to work but did not because of having to cross the picket line, the reason being that these employees seems to have been confronted with a threatening situation at work through no fault of their own. The extenuating circumstances would appear to justify their being paid." (Footnote omitted)

The appellants claim that after the mandamus suit was filed the board on advice of their attorneys took the position that no such agreement was made. This issue was not resolved at the trial level and we decline to discuss it.

**5.** W.Va.Code, 18–4–10, in material part, provides:

Thus, we believe there was a closure by proper authority.

The board also argues that the evidence in the mandamus action was not sufficient to show that the appellants were precluded from crossing the picket line by threats, intimidation or violence. However, the teachers argue that the board was precluded from asserting this issue since it was inconsistent with the position the board had earlier taken in its injunction suit where it successfully obtained an injunction against the parents on this same ground.[6] Some of the appellants had testified on behalf of the board in that earlier suit.

■ In the single Syllabus of *McDonald v. Long*, 100 W.Va. 551, 131 S.E. 252 (1926), we gave this rather terse summary of the law:

"Parties will not be permitted to assume successive inconsistent positions in the course of a suit or a series of suits in reference to the same fact or state of facts."

*See also Gardner v. Gardner*, 144 W.Va. 630, 110 S.E.2d 495 (1959); *Kap-Tex, Inc. v. Romans*, 136 W.Va. 489, 67 S.E.2d 847 (1951).

■ We have recognized in several cases that this rule does not apply where the factual predicates have changed between the first and second suits. The rule may not apply when different legal principles not involved in the first suit are asserted. *E.g., Guthrie v. The First Huntington National Bank*, 155 W.Va. 496, 184 S.E.2d 628 (1971); *McNunis v. Zukosky*, 141 W.Va. 145, 89 S.E.2d 354 (1955). None of these exceptions however are involved in

the present case and consequently we find that the board could not contend that there was no violence or intimidation involved in the picketing since this was directly contrary to their earlier position on which they successfully obtained an injunction.

■ In view of the foregoing law, we conclude that the trial court erred in ruling that the school board had no legal obligation to pay the appellants for the four days the school was closed due to the picketing which was found to be intimidating and threatening toward the teachers. We do not suggest that all instances of picketing would constitute a calamitous cause, or that picketing by teachers themselves would trigger the provisions of W.Va.Code, 18A-5-2.

Here, however, the third-party picketing was of sufficient severity to cause the board to obtain an injunction, and resulted in the county superintendent closing the school for four days prior to the injunction. We do not believe that in these circumstances the appellants should be denied their pay for the four days that they were prevented from working due to the picketing.

From a procedural standpoint, the appellants brought a mandamus action, which inevitably leads to the procedural inquiry of whether a clear legal right and concomitant duty can be shown and whether there is the absence of another adequate remedy. We have addressed these issues at some length in *Smith v. West Virginia State Board of Education*, 170 W.Va. 593, 295 S.E.2d 680, 683-84 (1982), where we said after reviewing some of our earlier cases:

"The county superintendent shall:
\* \* \* \* \* \*
"(5) Close temporarily a school when conditions are detrimental to the health, safety or welfare of the pupils."

6. The injunction petition was made a part of the record in the present case and contained these claims:
"a. Mass picket the premises of Marrowbone Grade School each school day, thus preventing students, supervisors, teachers, and other employees of said school to enter in and upon the premises thereof for the purpose of being present and discharging their duties.

"b. Wilfully interrupt and disturb said school in violation of West Virginia Code, 61-6-4.
"c. Intimidate and threaten to cause bodily injury to supervisors, teachers and other employees of said school who shall attempt to cross the aforementioned picket line of the respondents.
"d. Induce and attempt to induce children who are students at said school unlawfully to absent themselves from said school.
"e. Block public roads and impede and stop school buses and prevent them from carrying children to and from school."

"We have in the past permitted the writ of mandamus to be brought against public officials who have some positive duty to act and who fail to do so.... These decisions are predicated on the finding that the respondent had a statutory duty to act and had failed to do so or had acted improperly." [7]

Here, we believe that where teachers prove that they were prevented from attending school by reason of threats and intimidation or violence by parents picketing the school, they have proved a calamitous cause over which the county board of education has no control under W.Va.Code, 18A–5–2. Under this statute, such teachers "shall receive pay the same as if school were in session." [8]

For the foregoing reasons, the judgment of the Circuit Court of Mingo County is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

---

**7.** The following cases were cited in *Smith v. West Virginia State Board of Education, supra:* *State ex rel. Brotherton v. Moore,* 159 W.Va. 934, 230 S.E.2d 638 (1976); *State ex rel. Red Jacket Coal Corp. v. Stokes,* 142 W.Va. 126, 94 S.E.2d 634 (1956); *Puritan Coal Corporation v. Davis,* 130 W.Va. 20, 42 S.E.2d 807 (1947); *Wilson v. Lewis,* 166 W.Va. 273, 273 S.E.2d 96 (1980); *United Mine Workers of America v. Miller,* 170 W.Va. 177, 291 S.E.2d 673 (1982).

**8.** W.Va.Code, 18A–5–2, also provides that where the school is closed: "On such day or days, county boards of education may provide appropriate alternate work schedules for professional, auxiliary and service personnel affected by the closing of any school or schools under any or all of the above provisions." This provision however is not involved in the present case.