431 S.E.2d 681

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES/WELCH EMERGENCY HOSPITAL and West Virginia Division of Personnel, Petitioner Below, Appellant,**

v.

**Jeannie BLANKENSHIP, Respondent Below, Appellee.**

**No. 21463.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided June 11, 1993.

Darrell V. McGraw, Jr., Atty. Gen., Jan L. Fox, Sp. Asst. Atty. Gen., Steptoe & Johnson, Charleston, for Div. of Personnel.

Kathryn Reed Bayless, Princeton, for appellee.

**PER CURIAM:**

This dispute concerns the civil service classification of Jeannie Blankenship who is employed by the West Virginia Department of Health and Human Resources at Welch Emergency Hospital. Ms. Blankenship, who was classified as a computer operator II, pay grade 14, maintains that she should be classified as a data processing manager I, pay grade 22. After the Circuit Court of McDowell County upheld the level IV decision of the West Virginia Education and State Employees Grievance Board ordering Ms. Blankenship's reclassification to a data processing manager I, with back pay from January 13, 1987, the Division of Personnel appealed to this Court. Because the record shows that Ms. Blankenship did not prove her misclassification, we find that Ms. Blankenship should be classified as a computer operator II and, therefore, we reverse the decision of the circuit court.

Ms. Blankenship, a high school graduate with some additional training in computer science, has been employed in various positions at Welch Emergency Hospital since 1978. In January 1987, Ms. Blankenship, who had been patient accounts supervisor, was reassigned to the hospital's newly established data processing unit. Although a January 12, 1987 memorandum from Earl S. Whiteley, the Administrator at Welch Emergency Hospital, said Ms. Blankenship was to "assume the duties of Data Processing Manager," her civil service title of section chief II and her rate of pay remained unchanged. The January 12, 1987 memorandum also appointed a new patient accounts manager and his civil service title and rate of pay also remained unchanged.[1]

Because her reassignment to data processing did not change her civil service title, Ms. Blankenship filed a grievance alleging that her job should be classified as a data processing manager I. The hearing examiner at level II noted that Ms. Blank-

---

1. The record indicates that Ms. Blankenship filed a sexual discrimination suit before the Civil Service Commission because the reassignments. Although this suit was mentioned at Ms. Blankenship's level III grievance hearing, when the hearing examiner said that the suit "has been continued pending the outcome of the ( ... not audible)," the suit's status is unclear.

enship's job did not fit easily into the various civil service classifications and found that a supervisor I classification, pay grade 12, was the best fit. Ms. Blankenship appealed to level III, but the level III hearing examiner agreed with the Division of Personnel that Ms. Blankenship's job best fit into the computer operator II classification, pay grade 14. The Division reclassified Ms. Blankenship's position as a computer operator II during the grievance process.[2] At level IV, the hearing examiner agreed with Ms. Blankenship that her position should be classified as a data processing manager I, pay grade 22. After the circuit court upheld the level IV decision, the Division appealed to this Court.

In the present case, we are asked to classify Ms. Blankenship's position as either a computer operator II or a data processing manager I. The individual job specifications issued by the Division for the two positions have four major sections: nature of the work; examples of the work performed; required knowledge, skills and abilities; and, minimum training and experience. The computer operator II and the data processing manager I specifications applicable to this case were last revised on August 5, 1980 and June 26, 1980, respectively. The nature of the work section provides the following descriptions:

### Computer Operator II

*Nature of Work:* An employee in this class performs as a lead operator in the operation of a variety of electronic data processing equipment such as computer consoles, card readers, card punches, printers, tape and disk drives and remote job entry stations. Positions in this class are distinguished from those in Computer Operator I by the higher responsibility for error identification and resolution and equipment malfunctions and for training new operators. The incumbent may serve as a shift supervisor. Within established procedures and detailed instructions, the incumbent determines the priority of job runs, loads or mounts the equipment with cards, paper, tapes or

disks; monitors error messages and output, takes corrective actions to resolve processing problems and checks and verifies completed runs for compliance with user specifications. Significant problems involving programming and job control errors or equipment malfunctions are referred to a shift supervisor, assigned programmer, user agency or vendor representative for assistance in resolution. Shiftwork and an irregular work schedule is required of the position.

### Data Processing Manager I

*Nature of Work:* Under direction, an employee in this class manages the operation of a data processing unit responsible for one or more of the following functions: operations, data entry, or other areas related to the agency data processing installation. Through unit and shift supervisors, the incumbent is responsible for scheduling of production work for the most efficient utilization of equipment and personnel. The incumbent evaluates the operation through output audits, evaluates and resolves operational and equipment problems, develops operation standards, coordinates new systems installations with related data processing units and users, conducts cost analyses of equipment and directs training of subordinates. The incumbent is responsible for providing recommendations to management concerning the operational effectiveness of the operating unit and implementing the resulting policy. The individual is required to work irregular hours.

The examples of work performed include the following:

### Computer Operator II·

Operates a computer console, ... printers, tape and disk drives and remote job entry stations to process a variety of computer programs and data.

.  .  .  .  .

Assists in job scheduling and aligning production commitments with pro-

---

**2.** During the Division's civil service reclassification project, Ms. Blankenship's position was again reclassified, but not to a data processing manager I classification.

grams, hardware and software resources.

May supervise operators on an assigned shift.

Trains new operators; assists operators in the identification and resolution of program and equipment problems.

Notifies superviser [sic], programmer/analyst, user or vendor representative of program or equipment problems....

### Data Processing Manager I

Plans and directs the activities of a large data entry unit; schedules production jobs; determines job priorities; revises production schedule to meet user needs.

Evaluates and resolves production problems; advises technical staff and vendor of equipment problems.

.        .        .        .        .

Directs the start up and recovery of equipment from power outages and equipment failures; develops preventive maintenance schedule; maintains procedures for equipment and file security.

Evaluates equipment utilization and recommends changes in equipment configuration and the acquisition of new equipment; evaluates equipment acquisition proposals; coordinates new equipment installation with the user community.

.        .        .        .        .

Supervises the operations, data entry, job submission and distribution functions of a large user agency....

The required knowledge, skills and abilities include the following:

### Computer Operator II

Knowledge of the techniques and procedures used in the operation of computer equipment, including computer consoles, card reader, card punch, printers, tape and disk drives and remote job entry stations.

Knowledge of job scheduling procedures and operating procedures of a production-oriented data processing unit.

.        .        .        .        .

Ability to schedule jobs in a production-oriented data processing unit.

Ability to follow detailed oral and written instructions.

Ability to develop effective working relationships with operations personnel, hardware and software support personnel, user agency and vendor representatives.

### Data Processing Manager I

Knowledge of data processing concepts and the use and limitations of data processing equipment.

.        .        .        .        .

Ability to schedule data processing production work to meet user needs.

Ability to evaluate equipment and operational problems and recommend solutions.

Ability to work effectively with users, data processing personnel and vendor representatives in resolving equipment and operational problems.

Ability to plan and direct the work of data processing personnel.

Ability to prepare written reports on equipment utilization and individual and group performance characteristics.

The training and experience sections require a computer operator II to be a high school graduate with two years experience as a computer operator and a data processing manager I to be a college graduate with "[t]hree years of data processing experience including one year of supervisory capacity"; however, for the manager position, data processing or supervisory experience can be substituted for the required degree.

Ms. Blankenship maintains that her position is more accurately described by the data processing manager I specifications and that she used the data processing manager I specifications as a guide for her position. Ms. Blankenship argues that because Welch Hospital provides acute care,

it has departments and services not found in other state hospitals and, therefore, the hospital's data processing requirements are different and greater than other state hospitals. Ms. Blankenship maintains that her position entails meeting the hospital's requirements and that unlike a computer operator she spends most of her time in monitoring, coordinating and planning and little time "keying"—less than 25 percent.

In order to show her misclassification during the grievance process, Ms. Blankenship produced examples of her work and the testimony of her co-workers. According to the record, Ms. Blankenship's current position began in January 1987, when Welch Hospital shifted to computerized billing. Ms. Blankenship, as the hospital's data processing manager, coordinated the shift and acted as a liaison between the hospital's departments and the computer/software vendor. As the contact person, Ms. Blankenship notified the vendor when system problems occurred or when a disk failed; she arranged for the hospital's maintenance department to install wire labels, check anti-static pads and fix electrical lines; and, the vendor informed *her* when new equipment or software became available. Ms. Blankenship instructed other hospital departments on the data and codes necessary for computer billing, monitored the billings, corrected errors, ordered computer supplies, adjusted the billing codes to conform with federal requirements, and supervised and trained her department's data entry operators and several temporary workers.

The hospital's data processing department began operation with Ms. Blankenship and one full-time data entry operator. One additional full-time operator was subsequently employed. After the computer billing system was installed, Ms. Blankenship's work included more monthly reports for such things as trial balances, incentive billings, errors, accounts receivable, processing hours, patient billings, and bad debts. Ms. Blankenship also adapts procedures for new charges, requirements or procedures and notifies the hospital's departments of the computer's peak hours to avoid overloading the system. Indeed, Ms. Blankenship is the hospital's pivotal person for addressing data processing problems and assuring effective utilization of the computer system.

The Division argues that a computer operator II is the best classification for Ms. Blankenship's position. The Division maintains that according to the specifications, a data processing manager I manages a large computer operation and is not working supervisor. The Division notes that all the data processing manager positions are located in Charleston and all positions involve managing central data processing for an agency, such as the Department of Health.[3] A data processing manager works with a staff of professionals such as programmers and office automation consultants in order to provide an agency with such services as cost analysis of equipment, operational standards, problem resolution, recovery after power outages and long range planning. The Division notes that this level of responsibility is described in the data processing manager I specifications, which state that the employee "manages the operation of a data processing unit responsible for ... agency data processing ... [t]hrough unit and shift supervisors...."

The Division argues that Welch Hospital is not a data processing installation but rather is a user of the agency's installation. The Division notes that Welch Hospital's data processing unit is a small operation consisting of three full-time employees and that although the hospital is the only acute care state facility, its billing processes are not unique, but rather, are similar to billing processes of other health facilities.

The Division maintains that when the classification system is considered as a whole, Ms. Blankenship's position comes closer to the computer operator II classifi-

---

3. *W.Va.Code* 29–6–2(b) [1991], the Civil Service System's definition section, states:

"Agency" means any administrative unit of state government, including any authority, board, bureau, commission, committee, council, division, section or office.

cation because she is a working supervisor of a small operation. In support of their position at level III, the Division conducted a field audit of Ms. Blankenship's position.[4] Pam Heining, the personnel specialist who conducted the audit, said that Ms. Blankenship's position was "a combination of data job coordinator, something called user coordinator, computer operations and technical assistant," and concluded that the best fit for Ms. Blankenship's position was as a computer operator II. The Division also provided a list of the employees in the data processing manager I, II, and III positions and their agency assignments.

During the level IV hearing, Lowell D. Basford, Assistant Director of the Classification and Compensation Section of the Division, testified that the computer operator II classification is intended to include working supervisors who are responsible for resolving major error and equipment malfunctions, for determining work priority, for monitoring output and error messages and for acting as a liaison with user groups, vendors and programmers to resolve problems. Mr. Basford also testified that data processing managers work on large main frame computers for "large data entry unit[s]" and that the level of production, responsibility, sophistication of work described by the data processing manager I specifications exceeds the level found in Ms. Blankenship's position.

■ In Syllabus Point 1, *Randolph County Bd. of Ed. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), we said:

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.

*See* Syl., *Billings v. Civil Service Comm'n*, 154 W.Va. 688, 178 S.E.2d 801 (1971) (holding that a finding of a civil service commission will not be reversed "unless it is clearly wrong"); Syl. pt. 3, *Pockl v. Ohio Coun-*

ty Bd. of Ed., 185 W.Va. 256, 406 S.E.2d 687 (1991).

■ In the present case, the record shows that Ms. Blankenship's position does not require the level of production, responsibility and sophistication of work necessary for classification as a data processing manager I position. The data processing department at Welch Hospital consists of three full-time employees, one of whom is a working supervisor. At Welch Hospital, the data processing supervisor does not work "[t]hrough unit and shift supervisors," does not "coordinate ... installations with related data processing units and users," does not conduct "costs analyses of equipment" and is not responsible "for one or more functions ... related to the agency data processing...." Ms. Blankenship's appointment by the hospital administrator as manager of the hospital's data processing department was an in-house devise to clarify who was supervising a department because civil service classifications, such as section chief II, supervisor I and medicare reimbursement specialist, do not.

■ In Syllabus Point 1, *Dillon v. Bd. of Ed. of County of Mingo*, 171 W.Va. 631, 301 S.E.2d 588 (1983), we said:

"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syllabus Point 4, *Security National Bank & Trust Co. v. First W. Va. Bancorp., Inc.*, [166] W.Va. [775], 277 S.E.2d 613 (1981), *appeal dismissed*, 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284.

*See W.Va. Nonintoxicating Beer Comm'n v. A & H Tavern*, 181 W.Va. 364, 382 S.E.2d 558 (1989); *State By Davis v. Hix*, 141 W.Va. 385, 389, 90 S.E.2d 357, 359–60 (1955) (holding that "[w]here the language of the statute is of doubtful meaning or ambiguous, rules of construction may be resorted to and the construction of such statute by the person charged with the duty of executing the same is accorded great weight.")

---

**4.** Ms. Blankenship maintains that the field audit was conducted fifteen to twenty minutes before the level III hearing and consisted of asking her a few questions about the position description she had completed earlier.

In the present case, Ms. Blankenship's evidence consisted of work samples and the testimony of her co-workers. Ms. Blankenship did not present evidence on the complexity of her position compared to other positions that were classified as data processing manager I positions. The Division presented witnesses and evidence to show the relative degrees of responsibility for both classifications. The Division's interpretation and explanation of the classifications should have been "given great weight unless clearly erroneous." [5] Given the evidence, we find that the Division's interpretation was not clearly erroneous. We also note that unlike the Division's witnesses, Ms. Blankenship's co-workers had no experience in classification and that the samples of Ms. Blankenship's work showed that she was a user coordinator, which under the outdated classification system best fits into the computer operator I classification.

For the above stated reasons, the judgment of the Circuit Court of McDowell County is reversed and the order of the level III hearing examiner is reinstated.

Reversed.

---

**5.** For a discussion of the Division's argument that they have "the exclusive authority to classify state employees" under the code, *see Parsons v. W.Va. Bureau of Emp. Programs,* 189 W.Va. 107, 428 S.E.2d 528, 531 (1993) finding that "there is nothing in *W.Va.Code,* 29–6–10(1) [1992] which indicates that the Division of Personnel has more than general classification powers."