465 S.E.2d 887

**Doris WATTS, Earlene J. McComas, Plaintiffs Below, Appellees**

v.

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES/DIVISION OF HUMAN SERVICES, Defendant Below, Appellant.**

No. 22655.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1995.

Decided Dec. 8, 1995.

Charles W. Peoples and David M. Baker, Huntington, for Appellees Doris Watts and Earlene McComas.

Amy L. Langfitt, Assistant Attorney General, Charleston, for the West Virginia Department of Health and Human Resources.

PER CURIAM:

This is an appeal by the West Virginia Department of Health and Human Resources/Division of Human Services (hereinafter "DHHR" or "the Appellant") from a June 2, 1994, order of the Circuit Court of Cabell County reversing a decision of an administrative law judge for the West Virginia Education and State Employees Grievance Board in two consolidated employee reclassification actions. The Appellant contends that the administrative law judge was correct in concluding that the two Appellees, Ms. Doris Watts and Ms. Earlene J. McComas, were properly classified as Social Service Workers I (hereinafter "SSWI") rather than Social Service Workers II (hereinafter "SSWII"). We affirm the lower court's decision that the Appellees should be classified as SSWII.

I.

The Appellees are social service workers in the Cabell County DHHR office. In May 1989, both Appellees initiated a grievance contending that their classification should be changed from SSWI to SSWII. Subsequent to denials at Levels I, II, and III, the Appellees' cases were consolidated at Level IV in July 1989. An administrative law judge conducted hearings in April 1990 to determine the nature of the services performed by the Appellees and their proper classification. On May 24, 1991, the administrative law judge determined that the Appellees had been mis-

classified prior to a July 1, 1984, department-wide reclassification,[1] but that they were properly classified as SSWI thereafter. Pursuant to that order of the administrative law judge, the DHHR has paid backpay to the Appellees for the time period during which they were misclassified prior to 1984. Regarding the post–1984 period, however, the Appellees appealed the decision of the administrative law judge to the Circuit Court of Cabell County.

The lower court reversed the decision of the administrative law judge and concluded that the Appellees should have been classified as SSWII from the July 1, 1984, reclassification to the present. The Appellant then appealed to this Court, and an agreed order to stay execution was filed pending resolution of this appeal.

II.

Job specifications[2] utilized by the Appellant for SSWI and SSWII, effective in July 1984, provide a backdrop for assessment of this matter.[3] The "Nature of Work" category of the SSWI description provides as follows:

Under general supervision an employee in this class performs entry-level professional social service work in providing services to the public in such program areas as day care, chore services, personal care homes, information and referral, health related social services, home management, employment and training or other services at this level.

The "Nature of Work" category of the SSWII description provides as follows:

1. Since the grievance decision, the DHHR has undergone an additional department-wide reclassification, effective December 16, 1992. There is no indication that the issue of effect of such reclassification is in litigation, but clearly it is not before us in this appeal. Furthermore, the administrative law judge's decision with regard to the pre–1984 classification was not appealed to circuit court and is not presently before this Court. Thus, the only period at issue in the instant case is from July 1, 1984, to the present.

2. A job specification, as used in the civil service system might, in the context of this case, be more aptly described as essentially a job description. For clarity, the term job description will be used herein for job specification.

3. The West Virginia Department of Administration/Division of Personnel prepares classification specifications for duties related to each position in the DHHR. These personnel position descriptions provide the specifications for SSWI and SSWII.

Under general supervision an employee in this class performs professional social service work in providing services to the public in such program areas as nursing home placement, adult family care, pre-institutionalization, admission and after-care or other services at this level. *Positions providing generic social services are also allocated to this class.* (Emphasis added)

A critical determinant in the lower court's decision was the existence and meaning of the word "generic" as used in the specification for SSWII. Basing its conclusions upon extensive testimony regarding the nature of the work performed by the Appellees, the lower court noted that the Appellees were "responsibl[e] for a wide range of services for agency clients including but not limited to day care, chore or personal-care services, transportation, medical equipment provision, and other 'catch-all' services not covered by the office's four more specific units." This conclusion was founded upon the testimony of the Appellees and other individuals working with the Appellees in the General Family Services Unit in Huntington, West Virginia. Nancy Wade, the Appellees' immediate supervisor from July 1, 1984, through her retirement in December 1988, explained that the Appellees were engaged in "generic" social service work. Ms. Wade emphasized that the Appellees were responsible for cases which did not fall specifically within one of the designated units such as Protective Services or Foster Care. Marjorie Ruth Caldwell, the Appellees' supervisor subsequent to Ms. Wade's retirement, confirmed that the work performed by the Appellees was "generic" in nature.

In the SSWII job description, the word "generic" was used but was not defined. In fact, there was no further definition of or reference to the term "generic" employed within any of the descriptions until January 1, 1989. At that time, the description of the SSWIII position [4] was amended to include the statement that "[t]his class may also be used for positions in certain geographic areas performing professional social work in a variety of program areas such as day care, generic social services, foster care and protective services...." Mr. Lowell D. Basford, the West Virginia Division of Personnel's Assistant Director for Classification and Compensation, testified with regard to the meaning of the term "generic" as set forth in the SSWII description. He testified that the DHHR accorded the term "generic," as used in the SSWII description, the same meaning attached to that word in the SSWIII description which came into effect on January 1, 1989.[5] The administrative law judge accepted this premise and ruled for the Appellant on that basis.

The lower court, however, reasoned that the term "generic" as used in the relevant description of SSWII was not limited or restricted to any specialized meaning and should be interpreted only in its normal parlance. Specifically, the lower court stated the following:

The Administrative Law Judge was clearly wrong in accepting the testimony of Lowell D. Basford, Personnel's Assistant Director for Classification and Compensation, with regard to the meaning of the term "generic social services" as set forth in the specification for Social Service Worker II ..., finding that the most recent Social Service Worker III "Nature of Work" language was the situation-specific standard which applied to the "generic social services" concept of the Social Service Worker II specification, notwithstanding the fact that the Social Service Worker II specification ... under which Appellants claim became effective 7/1/84 while the So-

**4.** There are no allegations by any party that the Appellees should be classified as SSWIII. That description is referenced only to establish that a more limiting reference was eventually made for the term "generic."

**5.** This definition was apparently designed, according to the testimony of Mr. Basford, to include those non-metropolitan areas in which an individual social service worker could be assigned to handle a full range of social service work rather than performing only specialized duties.

cial Service Worker III specification ... relied upon by Mr. Basford did not become effective until 1/1/89, almost five years later.

### III.

In syllabus point one of *West Virginia Department of Health and Human Resources v. Blankenship,* 189 W.Va. 342, 431 S.E.2d 681 (1993), we explained the that " '[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.' Syllabus Point 1, *Randolph County Bd. of Ed. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989)." 189 W.Va. at 343, 431 S.E.2d at 682; *accord Ohio County Bd. of Educ. v. Hopkins,* 193 W.Va. 600, 457 S.E.2d 537 (1995); *Parham v. Raleigh County Bd. of Educ.,* 192 W.Va. 540, 453 S.E.2d 374 (1994).

West Virginia Code § 29–6A–7 (1992)[6] provides the standard of review for appealing a decision of the West Virginia Education and State Employees Grievance Board hearing examiner to a circuit court and explains that a decision may be reversed if it:

(1) was contrary to law or a lawfully adopted rule, regulation or written policy of the employer,

(2) exceeded the hearing examiner's statutory authority,

(3) was the result of fraud or deceit,

(4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or

(5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In *Martin v. Randolph County Board of Education,* 195 W.Va. 297, 465 S.E.2d 399 (1995) (W.Va.1995), we addressed the standard of review utilized by this Court in appeals of the nature encountered in the present case. In *Martin,* we stated that appeals from the West Virginia Educational Employees Grievance Board are reviewed by this Court under West Virginia Code § 18–29–7 (1985). *Martin,* 195 W.Va. at 302, 465 S.E.2d at 404; *see also Board of Educ. v. Wirt,* 192 W.Va. 568, 453 S.E.2d 402 (1994). We also explained in *Martin* that "[w]e review de novo the conclusions of law and application of law to the facts." 195 W.Va. at 303, 465 S.E.2d at 405.

The Appellant contends that the agency's interpretation of its own language should be given great weight and cites *Blankenship* for that proposition. We explained the following in syllabus point two of *Blankenship:*

" 'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syllabus Point 4, *Security National Bank & Trust Co. v. First W. Va. Bancorp, Inc.,* [166] W.Va. [775], 277 S.E.2d 613 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 [ (1982) ]." Syllabus Point 1, *Dillon v. Bd. of Ed. of County of Mingo,* 171 W.Va. 631, 301 S.E.2d 588 (1983).

189 W.Va. at 343, 431 S.E.2d at 682. We also stated specifically that the Division of Personnel's interpretation and explanation of the classifications should have been "given great weight unless clearly erroneous." *Id.* at 348, 431 S.E.2d at 687. The Appellees counter with the general principle that contractual language should be construed against its drafter. *See Charlton v. Chevrolet Motor Co.,* 115 W.Va. 25, 174 S.E. 570 (1934).

While the Appellant urges this Court to "interpret" the term "generic" in a specific fashion and contends that the definition should be that first set forth in 1989 in the SSWIII job description, no interpretation

---

**6.** West Virginia Code § 18–29–7 provides that decisions of the hearing examiner in education employee matter shall be reviewed under the same standard of review enunciated in West Virginia Code § 29–6A–7.

or construction of a term is necessary where the language is clear and unambiguous. *See Tri–State Asphalt Products, Inc. v. Dravo Corp.,* 186 W.Va. 227, 412 S.E.2d 225 (1991). Whether relying upon principles of contractual interpretation or statutory construction, we have never permitted construction of an unambiguous term. We explained in syllabus point four of *Tri–State* that " ' "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 172 S.E.2d 126 (1969).' Syllabus Point 2, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984)."

The lower court found that the term "generic" is not limited, restricted, or defined within the SSWII description. The inclusion of a more limiting usage, different from the normal parlance, within a subsequently drafted specification of SSWIII did not, in the opinion of the lower court, alter the clarity of that SSWII definition.[7] The lower court concluded that the administrative law judge was clearly wrong in finding that the word "generic" had some special, unique meaning in the SSWII description.

 There was no real factual dispute in this matter. The question of whether the SSWIII definition of "generic" should be utilized in determining the meaning of the word generic in the SSWII description is a legal question. Therefore, the standard of review for the lower court and this Court is de novo. We agree with the lower court that the term "generic" in the SSWII job description, absent any further definition, must be accorded its common meaning. *See* Syl. Pt. 4, *State v. General Daniel Morgan,* 144 W.Va. 137, 107 S.E.2d 353 (1959) (recognizing that "[s]tatutory words are to be given their ordinary and familiar significance and meaning"). The more specific and limiting definition for generic was added to the SSWIII job description on January 1, 1989. Had the DHHR intended for that definition to apply to the

SSWII as well as the SSWIII position, it could have included it within the SSWII description.

For these reasons, we affirm.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

7. Furthermore, the lower court reasoned that a definition included in the regulations for the first

time in 1989 clearly could not even arguably be applied in any manner prior to its adoption.