482 S.E.2d 679

Edward N. ROACH, Complainant
Below, Appellant

v.

REGIONAL JAIL AUTHORITY,
Respondent Below,
Appellee.

No. 23177.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 25, 1996.

Decided Dec. 17, 1996.

John C. Yoder, Harpers Ferry, for Appellant.

Chad M. Cardinal, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

This is an appeal [1] by Edward R. Roach (hereinafter "the Appellant") from a February 10, 1995, order of the Circuit Court of Berkeley County affirming a decision of a hearing examiner for the West Virginia Education and State Employees Grievance Board (hereinafter "the Board") regarding the Appellant's termination of employment with the Regional Jail Authority (hereinafter "the Appellee" or "the employer"). The Appellant contends that his employment was improperly terminated and that his due process rights were violated. We find that the record supports the findings and conclusion below and that the Appellant's due process rights were not infringed. We therefore affirm.

I.

The Appellant was hired by the Appellee as a Correctional Officer II for the Eastern Regional Jail on March 16, 1989, and he successfully served the standard probational one year, becoming a permanent employee on April 1, 1990. On March 10, 1992, the Appellant, while performing a routine perimeter check, allegedly observed a female inmate using the toilet in her cell by looking through her window.[2] This inmate immediately contacted the control tower to report the incident, and Officer Glen Pyles arrived at the cell five to ten minutes later to respond to the inmate's request for assistance. Officer Pyles testified that the Appellant ap-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the first Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

2. The female inmate testified that she had used the toilet, stood up, and was preparing to remove her clothing when she noticed the Appellant looking at her through the window. She specifically noted that she recognized him because the outdoor lighting was very bright and because his face was close to the window. She estimated that the Appellant remained at the window for several seconds with a "smirky grin." She could not definitively state that the Appellant watched her while she was using the toilet, but she did observe him immediately after she stood up.

peared outside the window again while Officer Pyles was in the cell with the inmate. Both Officer Pyles and the inmate testified that they saw the Appellant's face and saw him wave.

On March 11, 1992, the Appellant allegedly breached security in the Central Control Room by permitting doors to remain unlocked for a short period of time after receiving his dinner from the cook. The Central Control Room contains computer panels operating all interior and exterior doors and is protected by three locking steel doors and a series of hallways designed to prevent unauthorized access. While responsible for the security of this area, the Appellant allegedly allowed all three doors to remain unlocked.

On March 13, 1992, the Appellant was informed by letter that he was being placed on administrative suspension pending the investigation of these two incidents.[3] On March 15, 1992, Billy B. Burke, the Executive Director for the Appellee, received a letter from the Appellant outlining his objections to the charges. The Appellant also provided a written incident report and was personally interviewed by the Appellee's Chief of Operations on March 20, 1992. During that interview, the Appellant explained the incidents and was advised of the grievance procedure and provided with the grievance forms. On March 24, 1992, he filed a grievance challenging the suspension.

Upon completion of the investigation of the alleged incidents, the Appellee concluded that the evidence supported a finding that the Appellant had inappropriately observed the female inmate and was responsible for the security breach of March 11, 1992, and that such misconduct justified dismissal. By letter dated April 3, 1992, the Appellant was informed that his employment would be terminated on April 24, 1992. The letter reviewed the Appellant's prior employment history[4] and indicated that inconsistencies in the Appellant's statements raised serious questions of honesty and integrity.

On April 13, 1992, the Appellant filed another grievance with the Board challenging the discharge and alleging that the discharge was effected in retaliation for the filing of the grievance regarding the suspension. The Board conducted a grievance hearing, and twenty-one witnesses were questioned. The Appellant also filed complaints in the United States District Court for the Northern District of West Virginia and the Circuit Court of Berkeley County alleging wrongful discharge.

On October 8, 1993, the hearing examiner denied the Appellant's grievance and found that the Appellee had proven the Appellant's gross misconduct in failing to properly secure the Central Control Room, thus creating a vulnerable area to inmate penetration. The hearing examiner further found that the Appellant inappropriately observed a female inmate through an outside window. With regard to the retaliation claim, the hearing examiner found that the Appellant had been

---

**3.** Regional Jail Authority Policy and Procedure 3036 permits the administrative suspension without pay of employees for up to 30 days during the course of an investigation. The March 13, 1992, letter also notified the Appellant of the specific charges, as follows:

1. On or about 0700 hours Wednesday, 11 March 1992, while assigned to Central Control at the Eastern Regional Jail, it is alleged that you did cause and/or allow security Doors 153 and 150–B to be unsecured at the same time, thus creating an extremely serious breach of security. This alleged action is in direct violation of Post Orders, entitled Specific Instructions—Central Control, # 23.

2. On or about 2335 hours on Tuesday, 10 March 1992, while performing an outside perimeter check at the Eastern Regional Jail, it is alleged that you did exceed the professional parameters of you [sic] position by utilizing a prolonged period of observation of a female

inmate performing a normal bodily function, possibly creating an invasion of her privacy. This incident allegedly occurred in A–VI–142. It is further alleged that you were observed at her cell window again, within a short period of time. The alleged action is in direct violation of Policy and Procedure No. 3010, Procedure 12, 26, and 33.

**4.** Prior disciplinary actions include July 6, 1989, letter of reprimand for unauthorized radio communications; January 2, 1990, suspension for introduction of contraband and use of vulgar or suggestive language when dealing with female inmates; October 10, 1990, verbal reprimand for personal use of telephone and failure to complete paperwork; October 24, 1990, verbal reprimand for unacceptable language with regard to female officer; and January 19, 1992, verbal reprimand for receipting a personal check for an inmate.

advised that he would be suspended *pending* the investigation of allegations of misconduct, and the dismissal was predicated upon the results of that investigation, rather than upon any retaliatory motivation. The hearing examiner also found that the Appellant was an at-will employee subject to termination at any time.

Following a September 2, 1994, hearing on the appeal to the lower court, the lower court found that the hearing examiner's findings were consistent with the evidence and affirmed. The Appellant now appeals to this Court.

## II.

■ In syllabus point one of *West Virginia Department of Health and Human Resources v. Blankenship*, 189 W.Va. 342, 431 S.E.2d 681 (1993), we explained that " '[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to *W.Va.Code*, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.' Syllabus Point 1, *Randolph County Bd. of Ed. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989)." 189 W.Va. at 343, 431 S.E.2d at 682; *accord Watts v. West Virginia Dept. of Health and Human Resources*, 195 W.Va. 430, 465 S.E.2d 887 (1995); *Ohio County Bd. of Educ. v. Hopkins*, 193 W.Va. 600, 457 S.E.2d 537 (1995); *Parham v. Raleigh County Bd. of Educ.*, 192 W.Va. 540, 453 S.E.2d 374 (1994).

West Virginia Code § 29–6A–7 (1992) provides the standard of review for appealing a decision of the West Virginia Education and State Employees Grievance Board hearing examiner to a circuit court and explains that a decision may be reversed if it:

(1) was contrary to law or a lawfully adopted rule, regulation or written policy of the employer,

(2) exceeded the hearing examiner's statutory authority,

(3) was the result of fraud or deceit,

(4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or

(5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In *Martin v. Randolph County Board of Education*, 195 W.Va. 297, 465 S.E.2d 399 (1995), we addressed the standard of review utilized by this Court in appeals of the nature encountered in the present case. In *Martin*, we explained that appeals from the West Virginia Educational Employees Grievance Board are reviewed by this Court under West Virginia Code § 18–29–7 (1985), and that "[w]e review *de novo* the conclusions of law and application of law to the facts." 195 W.Va. at 304, 465 S.E.2d at 406. *See also Watts v. West Virginia Dept. of Health and Human Resources/Division of Human Services*, 195 W.Va. 430, 465 S.E.2d 887 (1995); *Board of Educ. v. Wirt*, 192 W.Va. 568, 453 S.E.2d 402 (1994).

The factual allegations underlying the Appellant's termination are not in substantial dispute; having reviewed those on a clearly wrong standard, we find that the evidence fully supports the factual findings of the hearing examiner and the lower court. The Appellant's primary challenges are to the manner through which he was terminated, the notice he received, and the motivation for the termination. The Appellant contends that the allegations of misconduct did not justify dismissal, that he was fired in retaliation for filing a grievance, and that the hearing examiner improperly placed the burden of showing retaliation on the Appellant after he had already established a prima facie case of retaliation.

## III.

■ A public employee's due process rights are founded upon the extent to which that employee has a property or liberty interest in his employment protected by Article III, Section 10, of the West Virginia Constitution and the Fourteenth Amendment to the United States Constitution. If there is a property right, the employee must be accorded due process in the termination proceeding. If there is no property right, the employer may refuse to renew the employment, without the requirement of a hearing or any specified reason for dismissal. *State ex rel.*

*Tuck v. Cole,* 182 W.Va. 178, 179–80, 386 S.E.2d 835, 836–37 (1989).

The powers and duties of the Appellee in the present case, as enumerated in West Virginia Code § 31–20–27(a) and (b) (1996), specify that "[a]ll correctional officers employed under this subsection shall also be covered by ... the *classified exempt* service protection policies of the Division of Personnel." (emphasis supplied). Thus, the employment status of the Appellant is legislatively delineated as a state *"classified exempt"* employee. Employees holding positions *statutorily exempt* from coverage under the classified service, such as the Appellant, are deemed "at-will" employees for purposes of resolving the employer/employee relationship. *See Parker v. West Virginia Health Care Cost Review Authority,* Docket No. 91–HHR–400 (June 30, 1992). As we summarized in *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), "[a]s a general rule, West Virginia law provides that the doctrine of employment-at-will allows an employer to discharge an employee for good reason, no reason, or bad reason without incurring liability unless the firing is otherwise illegal under state or federal law." *Id.* at 63, 459 S.E.2d at 340.

In *Oakes v. West Virginia Department of Finance and Administration,* 164 W.Va. 384, 264 S.E.2d 151 (1980), we discussed the employment status and protection for *classified* state employees. In syllabus point one of that opinion, we explained that state employees who are in *classified* service, as now defined in West Virginia Code § 29–6–2(h) (1996), can be dismissed only for "good cause," meaning "misconduct of a substantial nature directly affecting the rights and interest of the public, rather than upon trivial or any consequential matters, or mere technical violations of statute or official duty without wrongful intention." 164 W.Va. at 384, 264 S.E.2d at 151. As we recognized in *Buskirk v. Civil Service Comm'n of West Virginia,* 175 W.Va. 279, 332 S.E.2d 579 (1985), "[a] classified civil service employee has a sufficient interest in his continued uninterrupted employment to warrant the application of due process procedural safeguards to protect against the arbitrary discharge of such employee under Article 3, Section 10 of our constitution." 175 W.Va. at 283, 332 S.E.2d at 583. The protections afforded to *classified* public employees, however, simply do not apply to the Appellant in his position as a *classified exempt* employee, and his arguments regarding the absence of due process must be evaluated accordingly.

We note somewhat parenthetically that even where an employee is determined to have a property or liberty interest in his employment, the extent of due process required, as explained in syllabus point four of *State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919 (1978), is determined as follows:

"The extent of due process protection affordable for a property interest requires consideration of three distinct factors: first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of a property interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Syllabus Point 5, *Waite v. Civil Service Commission,* [161] W.Va. [154], 241 S.E.2d 164 (1977).

*See also Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court addressed the requirements of due process where the employee has a property interest in continued employment and concluded that "some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes." 470 U.S. at 543, 105 S.Ct. at 1494. Finding that due process required a pre-termination hearing in *Loudermill,* the Supreme Court explained that the hearing need not be "a full adversarial evidentiary hearing," but "[i]t should be an initial check against mistaken decisions—essentially, a de-

termination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." 470 U.S. at 545–46, 105 S.Ct. at 1495. "[O]ral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" is essential. 470 U.S. at 546, 105 S.Ct. at 1495. *See Board of Educ. v. Wirt,* 192 W.Va. 568, 575, 453 S.E.2d 402, 409 (1994).

The Appellant maintains that his due process rights were violated by the Appellee's failure to provide him with adequate notice and hearing prior to and subsequent to the dismissal. Reasoning that the Appellant's due process rights were limited by his status as a *classified exempt* employee, the hearing examiner concluded that the Appellant received more extensive due process protection than his position required. In *City of Huntington v. Black,* 187 W.Va. 675, 421 S.E.2d 58 (1992), we addressed the due process rights of an employee where specific legislative language required that termination be supported by good cause. In the syllabus, we explained the following:

> West Virginia Code § 8–14A–3 (1990), by its express provisions, does not require that an internal hearing be conducted prior to discharge, suspension, or reduction in rank or pay if the punitive action has already been taken. Principles of due process, however, dictate that a police officer subject to civil service protection must be afforded a predisciplinary proceeding prior to discharge, suspension, or reduction in rank or pay notwithstanding the provisions of West Virginia Code § 8–14A–3 unless exigent circumstances preclude such a predisciplinary hearing.

Although the parties in *Black* did not raise the issue of the type predeprivation hearing required, we explained that "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." 187 W.Va. at 680, 421 S.E.2d at 63 (quoting *Eldridge,* 424 U.S. at 343, 96 S.Ct. at 907.)

The Appellant in the present case was provided written notice of the charges, he responded to these charges by letter and telephone communication with the Executive Director, he filed a written incident report, and he presented his position to the Chief of Operations. He was thereafter informed, by written correspondence, of the decision to terminate his employment with specific explanation of the reasons for dismissal. He was also given fifteen days to present any additional reasons why the discharge should not become effective. In syllabus points two and three of *Snyder v. Civil Service Commission,* 160 W.Va. 762, 238 S.E.2d 842 (1977), we set forth guidelines for the type of notice required for a classified civil service employee. In syllabus point two of *Snyder,* we explained that "[t]he sufficiency of a notice of dismissal to a classified civil service employee depends on whether the employee was informed with reasonable certainty and precision of the cause of his removal." In syllabus point three, we continued: "A notice of dismissal to a classified civil service employee will generally be adequate if it sets out sufficient facts of the alleged misconduct so that its details are known with some particularity."

■ We affirm the conclusion of the lower court that the protections afforded to this at-will employee were sufficient and indeed beyond that required for a *classified exempt* employee, and we affirm the decision of the lower court in this regard.

## IV.

■ The Appellant also maintains that because there were no particular regulations addressing the precise types of misdeeds allegedly occurring, he could not be fired for the commission of such misdeeds. Indeed, the regulations governing the Appellant's employment do not contain a section specifically stating that a correctional officer is not permitted to look in a cell window at a female inmate. Nor do the regulations specifically state that a correctional officer will be disciplined for failure to secure a door to the central control room.[5] However, the hearing

---

**5.** The specific provisions upon which the Appellee relied provided as follows: Paragraph 12 of

Regulation 3010 states that employees shall not develop sexual relationships with an inmate and

examiner and the lower court found that the Appellant's actions constituted gross misconduct for which he could be disciplined regardless of the existence of any particular regulation specifically addressing the precise activity. As we explained in syllabus point five of *Mangum v. Lambert*, 183 W.Va. 184, 394 S.E.2d 879 (1990) "[S]eriously wrongful conduct by a civil service employee can lead to dismissal even if it is not a technical violation of any statute. The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the rights and interests of the public." *See Drown v. West Virginia Civil Serv. Comm'n*, 180 W.Va. 143, 375 S.E.2d 775 (1988); *Thurmond v. Steele*, 159 W.Va. 630, 225 S.E.2d 210 (1976). Moreover, the hearing examiner concluded that the Appellant's employment status as an "at-will" employee permitted his termination and that violation of a particular regulation need not be demonstrated. We agree with that determination, and we affirm in this regard.

## V.

The Appellant also contends that the employer's stated reasons for discharge were pretextual and that he was actually dismissed in retaliation for filing a grievance against the Appellee employer. We have consistently recognized the following:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee for damages occasioned by this discharge.

Syllabus, *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978). In syllabus point ten of *Hanlon v. Chambers*, 195 W.Va. 99, 464 S.E.2d 741 (1995), we explained as follows:

> " 'In an action to redress an unlawful retaliatory discharge under the West Vir-

ginia Human Rights Act, *W.Va.Code*, 5–11–1, *et seq.*, as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.' Syl. pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986)." Syl. pt. 1, *Brammer v. Human Rights Commission*, 183 W.Va. 108, 394 S.E.2d 340 (1990).

Once the complainant has satisfied that burden, the burden then shifts to the employer to provide a legitimate, intervening reason for the dismissal. As we explained in syllabus point nine of *Mace v. Charleston Area Medical Center Foundation, Inc.*, 188 W.Va. 57, 422 S.E.2d 624 (1992):

> "In a retaliatory discharge action, where the plaintiff claims that he or she was discharged for exercising his or her constitutional right(s), the burden is initially upon the plaintiff to show that the exercise of his or her constitutional right(s) was a substantial or a motivating factor for the discharge. The plaintiff need not show that the exercise of the constitutional right(s) was the only precipitating factor for the discharge. The employer may defeat the claim by showing that the employee would have been discharged even in the absence of the protected conduct." Syllabus point 3, *McClung v. Marion County Commission*, 178 W.Va. 444, 360 S.E.2d 221 (1987).

188 W.Va. at 59, 422 S.E.2d at 626.

When the Appellant in the case sub judice was suspended, he was specifically

---

that "any employee who attempts to use their position to develop an inappropriate relationship shall be subject to disciplinary action." Paragraph 26 states that the appearance of impropriety, fraternization, or other non-professional association by and between employees or inmates is not permitted, and Paragraph 33 calls

for employees to be respectful, polite, and courteous in their contacts with inmates. With regard to the security of the central control room doors, Paragraph 23 of the specific instructions/central control states, "All doors leading into the central control will remain locked at all times...."

informed that the suspension was in response to allegations of misconduct and that he was being suspended *pending* investigation of the allegations. Thus, as early as the initial suspension, the Appellant should have been aware of the potential for future disciplinary action. His attempt to characterize the cause of dismissal as retaliatory rather than the simple culmination of the investigation of his own misconduct is untenable. The Appellant advances the argument that because he did no work between the suspension and the firing, the only *intervening* event was the filing of the grievance and could therefore be the only reason for the termination. This argument obviously ignores the reality that he was suspended *pending* the investigation and that the results of the investigation justified the termination. The hearing examiner and lower court concluded that the Appellant's termination was not premised upon the filing of the grievance. There is no evidence which would sufficiently link the employer's decision with the protected activity, and we affirm the decision of the lower court on this issue.

Affirmed.

RECHT, J., sitting by temporary assignment.