582 S.E.2d 751

James **RICHARDS,** Petitioner Below, Appellant,

v.

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES/OFFICE OF MANAGEMENT INFORMATION SERVICES and West Virginia Division of Personnel, Respondents Below, Appellees.**

No. 30788.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided Feb. 27, 2003.

Dissenting Opinion of Justice McGraw July 2, 2003.

Kathryn Reed Bayless, Bayless & McFadden, Princeton, for Appellant.

Darrell V. McGraw, Jr., Attorney General, B. Allen Campbell, Assistant Attorney General, Karen O'Sullivan Thornton, Assistant Attorney General, for Appellees.

PER CURIAM:

James Richards, appellant/petitioner below (hereinafter referred to as "Mr. Richards"), appeals an order of the Circuit Court of Kanawha County affirming a decision of the West Virginia Education and State Employees Grievance Board (hereinafter referred to as "Grievance Board"). The Grievance

Board denied Mr. Richards' request for reallocation of his position as an Information Systems Manager II (hereinafter referred to as "ISM II") to that of Information Systems Manager III (hereinafter referred to as "ISM III"). Here, Mr. Richards seeks to have this Court determine that he was erroneously denied reallocation from ISM II to ISM III. Based the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm the decision of the Circuit Court of Kanawha County.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In January of 1999, Mr. Richards was hired by the West Virginia Department of Health and Human Resources (hereinafter referred to as "DHHR") to fill the vacant position of ISM II within the Office of Management Information Systems.[1] In a letter dated April 30, 1999, Mr. Richards' supervisor, Phil Weikle, requested the West Virginia Division of Personnel (hereinafter referred to as "DOP") to reallocate the positions of four of his staff members from ISM II to ISM III.[2] One of the staff members was Mr. Richards. By letter dated May 13, 1999, DOP indicated that two staff members should be reallocated to ISM III. However, the other two, which included Mr. Richards, should not be reallocated to ISM III.[3]

Mr. Richards filed a grievance on September 13, 1999, seeking to challenge the DOP's refusal to reallocate him to ISM III. At each level of the grievance procedure, the decision of the DOP was affirmed. After the Grievance Board issued its written decision denying relief, Mr. Richards appealed the decision to the circuit court. The circuit court ultimately affirmed the Grievance Board decision by order entered December 5, 2001. From this ruling, Mr. Richards now appeals.

1. An appellee's brief was filed by DHHR.

2. An appellee's brief was filed by DOP.

## II.

## STANDARD OF REVIEW

In syllabus point 1 of *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989), this Court indicated that "[a] final order of the hearing examiner for the [West Virginia Education and State Employees Grievance Board], made pursuant to W. Va.Code, 18–29–1, *et seq.* [1999], and based upon findings of fact, should not be reversed unless clearly wrong." *Accord* Syl. pt. 1, *Keatley v. Mercer County Bd. of Educ.*, 200 W.Va. 487, 490 S.E.2d 306 (1997). This Court elaborated more fully on the standard of review of Grievance Board determinations in syllabus point 1 of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000), as follows:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Within the confines of this standard, we will analyze the issue raised by Mr. Richards.

## III.

## DISCUSSION

Mr. Richards contends that the work he performs as an ISM II employee is indistinguishable from the description of the work assigned to an ISM III employee. Mr. Richards does not contend that his job duties changed after he was hired. Instead, Mr. Richards simply argues that he should be reclassified as an ISM III employee because of his misclassification at the time of hiring.[4] We disagree.

3. The distinction between ISM II and ISM III is explained in the Discussion section of the opinion.

4. The DOP asserts that Mr. Richards should not be allowed to argue the issue of misclassification

We find that the Nature of Work requirements for the ISM II and ISM III positions are similar, but not identical.[5] The actual differences between the two positions are set out in the Distinguishing Characteristics specifications for the respective positions.[6]

because he filed a grievance only for reallocation. While it may be true that Mr. Richard's filed a grievance seeking only reallocation, the Administrative Law Judge (ALJ) addressed the grievance as one of misclassification. Consequently, the issue of misclassification is properly before this Court.

While the ALJ did address Mr. Richards' grievance as one of misclassification, we note that such was done by using an apparently erroneous definition of the term "reclassification". The ALJ's order does appear to define reallocation broader than the administrative rules suggest. According to the ALJ's order, reallocation is defined by the administrative rules as "[r]eassignment by the Director of Personnel of a position from one classification to a different classification on the basis of a significant change in the kind or difficulty of duties and responsibilities assigned to the position *or to correct a position misclassification*." (Emphasis added). Under this definition of reallocation, misclassification is a component. However, in our review of the administrative rules *effective when Mr. Richards filed his grievance*, reallocation was not defined as the same is set out in the ALJ's order. Under the administrative rules in place when Mr. Richards filed his grievance, reallocation was defined as "[r]eassignment by the Director of Personnel of a position from one classification to a different classification on the basis of a significant change in the kind or difficulty of duties and responsibilities assigned to the position." This definition was in effect beginning July 1, 1998, through June 30, 2000. The same definition is used in the current administrative rules which became effective July 1, 2000. *See* 143 CSR 1 § 3.78 ("Reallocation: Reassignment by the Director of Personnel of a position from one classification to a different classification on the basis of a significant change in the kind or level of duties and responsibilities assigned to the position."). Notwithstanding the apparent unsupportable broad definition given to the term reallocation by the ALJ, we will address the misclassification issue.

5. The description of the Nature of Work for an ISM II position is as follows:

Under administrative direction, performs advanced level administrative and supervisory duties directing the data processing operations of a medium sized or larger agency with a comprehensive, full-range data processing function. May also include specialty administrators in the State's central facility departments with multi-faceted and well-developed data processing functions. Activities supervised include: application programming, computer operations, support services, personal computer support or system development. Directly, or through lower level supervisors, schedules work and sets unit priorities for the most efficient utilization of equipment and personnel. Resolves equipment problems and coordinates system usage by agency personnel. Provides advice and assistance to higher level management. Performs related work as required.

The description of the Nature of Work for an ISM III position is as follows:

Under administrative direction, performs advanced level administrative and supervisory duties in directing the data processing operations within State agencies with comprehensive, full-range data processing functions or in the State central data facility oversees a specialized unit or several units providing statewide services. Activities supervised include: application programming, program design, computer operations, network support or system development. Directly, or through lower level supervisors, schedules work and sets agency-wide data priorities and provides for the most efficient utilization of equipment and personnel. Fully responsible for hardware and software problem resolution and the coordination of system usage by agency personnel. Provides advice and assistance to top management. Performs related work as required.

6. The description of the Distinguishing Characteristics for an ISM II position is as follows:

Information Systems Manager II is distinguished by the broad base of unit activities supervised. In the state central data facility, work is in an area of computer service with a large scope of duties which impact on the planning, purchasing, and implementation of user agency systems. In a state agency, Information Systems Manager II is responsible for overseeing a staff involved in programming, or system development in addition to distribution, coordination, and/or support services including LAN management, network support, personal computer support (both hardware and software); the staff encompasses several units involved in separate agency program function.

The description of the Distinguishing Characteristics for an ISM III position is as follows:

Information Systems Manager III is distinguished from the other levels by the oversight of several units of professional, paraprofessional, technical and supervisory staff such as programming, support service including LAN management, network support (both hardware and software) or data management. In the larger state agencies, Information Systems Manager III is responsible for overseeing the work of a broad scope of an agency's information staff and reports directly to the agency's Management Information System Director. The incumbent has wide latitude in the planning and implementation of agency-wide automation needs. In the state central

The ALJ documented the differences in the ISM II and ISM III positions by relying specifically on the descriptions as the same are set forth by the Distinguishing Characteristics section of the respective job specifications. One of the critical differences found by the ALJ is as follows:

> The Information Systems Manager II is responsible for "overseeing a *staff* involved in programming, or system development in addition to distribution, coordination, and/or support services ... the *staff* encompasses several units involved in separate agency functions[.]"

> The Information Systems Manager III position is "distinguished from the other levels [of Information Systems Manager] by *the oversight of several units of professional, paraprofessional, technical and supervisory staff*[.]"

In the final analysis the ALJ found that the ISM II position requires supervision of nonsupervisory staff. In contrast, the ISM III position requires supervision of supervisory staff. In this case, the record is clear in establishing that Mr. Richards does not supervise supervisors. In fact, it appears that Mr. Richards directly performs much of the work assigned to him.

Mr. Richards suggests that the DOP's denial of his efforts to be reclassified was based merely upon a comparison of the number of people he supervised, verses the number of people supervised by the two employees who were reclassified as ISM III.[7] The record does not support his assertion. In the DOP's denial of Mr. Richards' reallocation, the DOP took into consideration the overall greater managerial responsibilities assigned to the two reclassified employees.[8] In doing so, the DOP determined that all of the work performed by those two employees met the standard for ISM III. The same could not be found for Mr. Richards.[9]

Although the ALJ found that some of the technical work performed by Mr. Richards is set out in ISM III, Mr. Richards simply does not perform the higher level managerial tasks set out in ISM III. This conclusion was

---

data facility, Information Systems Manager III is responsible for consulting services, development center, automation resource center, network services, operations center as examples.

7. Mr. Richards has argued that the DOP interpreted the word "supervisor" to mean a specific number of subordinates. According to Mr. Richards our holding in *Watts v. West Virginia Department of Health and Human Resources/Division of Human Services*, 195 W.Va. 430, 465 S.E.2d 887 (1995) (per curiam) precluded interpretation of an unambiguous term like supervisor. *Watts* has no application to the facts of this case. Mr. Richards has ineffectively attempted to make it appear that the word supervisor has been given a new. meaning by the DOP. The record in this case does not disclose any interpretation or new meaning being given to the word "supervisor." All parties agreed that Mr. Richards is a supervisor. However, as a supervisor Mr. Richards does not supervise subordinates who supervise others.

8. In the DOP's letter addressing the issue of who would be reallocated, the following was stated:
   Based on the relative duties and responsibilities and supervisory level, I am recommending that the reallocations for Ms. Kress and Ms. Thomas be approved, but that the reallocations for Mr. Parrish and Mr. Richards be denied. The recommendation is based on our evaluation of the "managerial responsibility" of the

positions. For example, you will note that both Mr. Parrish and Mr. Richards only supervise 3 employees. However, Ms. Thomas supervises 6 employees which includes a Database Administrator and 2 Programmer Analyst VI's who have supervisory responsibility as well. Ms. Kress has total responsibility for 26 employees. In addition, Ms. Thomas manages the Applications Programming Section, while Ms. Kress is responsible for the Networking and Technical Support Section.

9. During the Level IV hearing, evidence was introduced that indicated that Ms. Kress, who was reclassified, was the Manager of Network and Technical Support. Ms. Kress managed five teams and directly supervised five employees and was responsible for the work of about 26 employees. Ms. Thomas, who was also reclassified, was the Manager of Application Development and Support. She managed four teams and directly supervised six employees and was responsible for the work of about 30 employees. The primary work of Ms. Kress and Ms. Thomas involved directing, organizing, monitoring and prioritizing the work of their teams. In contrast, Mr. Richards was the Manager of Security, Operations and Network. He supervised three employees (now four) who did not supervise other employees. Moreover, the primary work of Mr. Richards involved technical duties as opposed to managerial duties.

reached by the DOP and affirmed by the ALJ as well as the circuit court. We see no basis for disturbing this well-founded conclusion.

## IV.

## CONCLUSION

The circuit court's order of December 5, 2001, is affirmed.

Affirmed.

Justice McGRAW dissents and files a dissenting opinion.

(Filed July 2, 2003)

McGRAW, J., dissenting:

I dissent from the majority's opinion because, in my view, the Administrative Law Judge ("ALJ") failed to see the proverbial forest for the trees. Despite the evidence of the true parameters of Appellant's advanced level administrative and supervisory responsibilities and the overall scope of his activities, the ALJ deemed the evidence of the number of employees Appellant supervises in his current position to be dispositive of the issue of Appellant's reclassification. Because I believe the evidence supports Appellant's contention that he is entitled to be reclassified from an Information Systems Manager II to an Information Systems Manager III, I respectfully dissent.